CHARLES G. STEVENS et al., as Trustees for MARIETTA R. STEVENS, Respondents and Appellants, *v.* JOHN L. MELCHER et al., as Executors of PARAN STEVENS, Deceased, et al., Appellants and Respondents.

1. TESTAMENTARY TRUST — POWERS OF TRUSTEE AS TO REAL ESTATE. If a testamentary trustee is given power by the will to invest in real estate, or to build upon lands already belonging to the estate, all parties are bound thereby, be they life tenants, beneficiaries of a trust or remaindermen.

2. CESTUI QUE TRUST DISTINGUISHED FROM LIFE TENANT. Where a will gives property to trustees, to "hold, invest and manage" during the life of a certain person, to collect the income and receipts and pay the same to such person, and, on the latter's death, to divide the estate among specified remaindermen, the life beneficiary does not occupy the position of life tenant, but that of *cestui que trust*.

3. ERECTION OF BUILDING. The erection of a building upon the lands of an estate is equivalent to an investment of the proceeds of the estate in the purchase of other lands.

4. ALLOWANCE TO LIFE BENEFICIARY OF VALUE OF PERMANENT IMPROVEMENT. Where testamentary trustees for a life beneficiary have power, under the will, to invest the proceeds of the trust committed to their charge in building upon the trust real estate, when it can be reasonably anticipated that such investment will be beneficial to the remaindermen and to the life beneficiary, the latter is entitled to be allowed and to charge against the capital of the trust, on an accounting in equity, the value of the permanent improvement added to the trust real estate by replacing, with money furnished by the life beneficiary and necessary to preserve the property to the estate, unproductive buildings with productive buildings, with the approval of the trustees and under such circumstances as to render the construction their act, done in the exercise of their judgment as trustees.

5. INSERTION OF VALUE OF TRUST PROPERTY IN JUDGMENT — ESTOPPEL — EXPENSE OF REPAIRING DEFECT IN BUILDING. The insertion in a judgment construing a will, of permission to the executors to convey, and to trustees to receive property at a value found by the court, does not constitute an estoppel which will necessarily impose upon the trust estate, to the detriment of the income of the life beneficiary, the amount paid by the executors to repair a structural defect in a building, discovered after its conveyance to the trustees, and constituting a mutual mistake of fact, unknown to the parties and to the court at the rendition of the judgment.

6. ACCOUNTING IN EQUITY — EXECUTORS AND TRUSTEES — EXPENSE OF REPAIRING DEFECT IN BUILDING. When a court of equity has acquired

jurisdiction of an account arising out of the estate of a decedent, between executors, trustees, a beneficiary under the trust, and remaindermen, it may do equity between the parties, and to that end may charge the executors, instead of the trust estate, with the expense of repairing a structural defect in a building conveyed by the executors to the trustees as part of the trust fund, by a deed without covenants and which might not support an action at law for damages.

7. RELIEF FROM CONVEYANCE.   Equity can give relief from a conveyance of real estate, where there was a mutual mistake of fact in reference to the condition of the property, arising from an essential defect in the construction of a building, hidden and unknown at the time of the transfer.

8. INSURANCE ON TRUST PROPERTY CHARGED UPON INCOME.   Insurance premiums paid by the trustees of a testamentary life estate in fulfillment of the obligation of mortgages placed upon the trust property by the testator, and premiums paid by the trustees, with the consent of the life beneficiary, for additional insurance not in excess of the value of the life estate nor procured on account of the remaindermen, are properly chargeable to the income, and not to the capital, of the trust estate.

9. RATE OF INTEREST TO BENEFICIARY OF TRUST.   Where executors, on turning over a portion of a life trust estate to the trustees, agree that the life beneficiary of the income shall receive "the interest to which she is in law entitled on the unpaid part of her trust legacy," the executors are chargeable with interest at the legal rate in force at the time it accrued.

10. EXECUTOR AS LEGATEE — APPROPRIATION OF MONEYS COLLECTED FROM ESTATE — INTEREST.   Where an executor, who is also a legatee, has applied to his own use money collected from the estate by him as executor, it is proper, on an accounting, to compute the interest upon the legacy until the amount collected by the legatee equals the interest, and then credit it as a payment on the legacy ; and then compute the interest on the balance until another payment is in like manner so credited.

11. IMPROVEMENTS MADE BY LESSEE OF TRUST PROPERTY.   The life beneficiary of a trust is not entitled, on an accounting with the trustees and remaindermen, to be credited with the value of permanent improvements made by a lessee of the trust property at his own expense, under a lease for the beneficiary's life, on receiving from the beneficiary a bond indemnifying him against the loss which would accrue to him if the beneficiary's life should terminate before a specified time, where the beneficiary has lived beyond the specified time and it is apparent that the cost of the improvements did not come out of the rent.

12. OBJECTION TO CONTRACT SETTING UP TRUST FUND — LACHES.   The objection, by the life beneficiary of a testamentary trust, on an accounting in equity, that a contract, under which certain property was conveyed to the trustees by the executors towards setting up the trust fund, was, as to such property, in excess of the powers of the parties under the will,

is too late, when it appears that the contract was entered into for the purpose of carrying into force authority given to the executors by a judgment construing the will, and that, after accepting the conveyance and entering into possession, the trustees and beneficiary had used the property for their own benefit for nearly twenty years.

13. EXECUTOR'S COMMISSIONS. The court may, on an accounting in equity, properly disallow the commissions of an executor who has been guilty of neglect or unfaithfulness in the discharge of his duties.

14. TRUSTEE'S COMMISSIONS. When the trustee of a legacy, of which the executor is the life beneficiary, is allowed commissions upon the *corpus* of the fund received by him, he may properly be denied commissions upon moneys of the estate paid over by the executor, as such, to himself as beneficiary of the legacy.

*Stevens* v. *Melcher*, 80 Hun, 514, modified.

(Argued March 16, 1897; decided April 20, 1897.)

CROSS-APPEALS from a judgment of the General Term of the Supreme Court in the first judicial department, entered December 31, 1894, which modified and as modified affirmed a judgment entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George Hoadly* and *Wheeler H. Peckham* for Union Trust Company of New York, as executor of Marietta R. Stevens, deceased, appellant, and George D. Stibbard and George Hoadly, as trustees under marriage settlement of Mary Fiske Paget et al., appellants. The General Term erred in sustaining the action of the Special Term and referee in charging the expense of rebuilding the walls and foundation of the apartment house at the cost of $33,707.31, to the plaintiff's trust legacy, instead of to the estate of Paran Stevens. (Waterman on Spec. Perf. § 366 ; *Dale* v. *Roosevelt*, 5 Johns. Ch. 173 ; *Fritzler* v. *Robinson*, 70 Iowa, 500 ; *Marvin* v. *Bennett*, 8 Paige, 312 ; *Hurd* v. *Hall*, 12 Wis. 112 ; *Griffith* v. *Sebastian Co.*, 49 Ark. 24 ; *Barth* v. *Devel*, 11 Col. 494 ; *Harris* v. *Poyner*, 1 Drewry, 174 ; *Powys* v. *Blagrave*, Kay, 495 ; *Brereton* v. *Day*, 1 Irish Ch. 518 ; *Stevens* v. *Melcher*, 80 Hun, 533 ; *Belden* v. *State*, 103 N. Y. 1.) The General Term erred in affirming the action of the Special Term and

referee in applying payments to the principal of the $100,000 legacy in advance of the income of the $1,000,000 trust legacy and the interest on it. (*State of Connecticut* v. *Jackson*, 1 Johns. Ch. 13 ; *Williams* v. *Houghtaling*, 3 Cow. 86 ; *Young* v. *Hill*, 67 N. Y. 162 ; *Merchants' Bank* v. *Freeman*, 15 Hun, 359 ; *Peyser* v. *Myers*, 45 N. Y. S. R. 413 ; *Williamson* v. *Williamson*, 6 Paige, 298 ; *Cooke* v. *Meeker*, 36 N. Y. 15 ; *Hepburn* v. *Hepburn*, 2 Bradf. 74 ; *Parkinson* v. *Parkinson*, 2 Bradf. 77 ; *Seymour* v. *Butler*, 3 Bradf. 193 ; *Bullard* v. *Benson*, 31 Hun, 104 ; 96 N. Y. 499 ; *In re Combs*, 3 Dem. 348 ; *In re Fogg*, 5 Dem. 422.) The General Term erred in affirming the judgment of the Special Term and referee that the accountings and decrees in the Surrogate's Court are not conclusive that appellant had been charged with all the interest for which she was liable. (Code Civ. Pro. § 2742.) The General Term erred in affirming the judgment of the Special Term and referee, that the rate of interest with which appellant should be credited on her legacies was reducible to six per cent per annum on the 1st of January, 1880. ( *Williamson* v. *Williamson*, 6 Paige, 298 ; *Isenhart* v. *Brown*, 1 Edw. Ch. 411 ; *Cole* v. *Niles*, 3 Hun, 326 ; *Rowe* v. *Lansing*, 53 Hun, 210 ; 1 Roper on Legacies, 432 ; *O'Brien* v. *Young*, 95 N. Y. 428.) To bind a *cestui que trust* by ratification, it is not only necessary that she should have known the facts, but also her legal rights in the premises. (*Adair* v. *Brimmer*, 74 N. Y. 539 ; *Livingston* v. *N. Y. L. Ins. & T. Co.*, 36 N. Y. S. R. 566.) The contract of October 28, 1873, was in excess of the authority committed by law and the will of Paran Stevens, to the parties, and to the extent of such excess has been illegally acted upon and enforced. (*Graves* v. *Waterman*, 63 N. Y. 657 ; *Adair* v. *Brimmer*, 74 N. Y. 539 ; *Livingston* v. *N. Y. L. Ins. & T. Co.*, 36 N. Y. S. R. 566 ; 1 R. S. 730 ; *Tolles* v. *Wood*, 99 N. Y. 616 ; *I. W. W. Co.* v. *Tribilcook*, 99 Mich. 454.) The General Term erred in affirming the judgment of the Special Term and referee in refusing to allow commissions to Mrs. Stevens. (*King* v. *Talbot*, 40 N. Y. 96 ; *Meacham* v. *Sternes*, 9 Paige, 398 ;

*In re Mount*, 2 Redf. 405 ; *Morgan* v. *Morgan*, 4 Dem. 353.)
The General Term erred in affirming the judgment of the
Special Term and referee, in allowing commissions to the trus-
tees, and in excluding competent testimony proving their infi-
delity to their trust. (*Adair* y. *Brimmer*, 74 N. Y. 539 ;
*King* v. *Talbot*, 40 N. Y. 76 ; *Graves* v. *Waterman*, 63 N.
Y. 657 ; *Livingston* v. *N. Y. L. Ins. & T. Co.*, 36 N. Y. S.
R. 566 ; *Tolles* v. *Wood*, 99 N. Y. 616 ; 2 R. S. ch. 6, tit. 3,
art. 3, § 58.)

*George Hoadly* and *Wheeler H. Peckham* for same parties as
above, respondents. The General Term did not err in crediting
Marietta R. Stevens, appellant, and charging her trustees with
$90,000, being the amount the referee finds she added to the
value of the estate by the destruction of the buildings Nos.
228 and 230 Fifth avenue, and the erection of an addition to
the apartment house in their place, and in modifying the
judgment of the Special Term and referee to that effect. (*In
re Newman*, L. R. [9 Ch. App.] 681 ; *Drake* v. *Trefusis*, L.
R. [10 Ch. App.] 364 ; *Thompson* v. *N. Y. & H. R. R. Co.*,
3 Sandf. Ch. 625 ; *Branch* v. *Jesup*, 106 U. S. 468 ; Perry
on Trusts, §§ 477, 552 ; *Cogswell* v. *Cogswell*, 2 Edw. Ch.
231 ; *Ames* v. *Downing*, 1 Bradf. 321 ; *Labutut* v. *Delatour*,
54 How. Pr. 435 ; *In re Nesmith*, 140 N. Y. 609 ; *In re
Deckelmann*, 84 Hun, 476 ; *In re Latin*, 2 Connolly, 106.)
The General Term did not err in reversing the judgment of
the Special Term and referee, which charged the entire
amount paid for insurance to Mrs. Stevens, and in apportion-
ing it between the tenant for life and the remainderman. (*In
re Zahrt*, 94 N. Y. 605 ; Perry on Trusts, § 487 ; *Lerow* v.
*Wilmarth*, 9 Allen, 382 ; *In re Livingston*, 34 N. Y. 555 ;
*Peck* v. *Sherwood*, 56 N. Y. 615 ; *Stilwell* v. *Doughty*, 2
Bradf. 311 ; *Fleet* v. *Dorland*, 11 How. Pr. 489 ; *Thomas* v.
*Evans*, 105 N. Y. 611 ; *In re Frazer*, 92 N. Y. 246 ; *Watts*
v. *Howard*, 7 Metc. 478 ; *Plympton* v. *Boston Dispensary*,
106 Mass. 544 ; *Bridge* v. *Bridge*, 146 Mass. 373.)   The
General and Special Terms and referee did not err in allowing

interest to Mrs. Stevens from the date of the death of her husband at least at the legal rate for the time being. (*Williamson* v. *Williamson*, 6 Paige, 298 ; *Cooke* v. *Meeker*, 36 N. Y. 15 ; *Bullard* v. *Benson*, 31 Hun, 104 ; 96 N. Y. 499 ; *Hepburn* v. *Hepburn*, 2 Bradf. 74 ; *Parkinson* v. *Parkinson*, 2 Bradf. 77 ; *Seymour* v. *Butler*, 3 Bradf. 193 ; *In re Combs*, 3 Dem. 348 ; *In re Fogg*, 5 Dem. 422 ; Redfield on Surrogate's Courts [4th ed.], 612 ; *King* v. *Talbot*, 40 N. Y. 93 ; *Wheeler* v. *Ruthven*, 2 Redf. 491.) The General Term, Special Term and referee did not err in charging the cost of fire escapes, and the bill of Weeks for repairs, to the trust fund. (L. 1871, ch. 625 ; L. 1874, ch. 557, §§ 1, 7; *Willy* v. *Mulledy*, 78 N. Y. 310 ; *McRickard* v. *Flint*, 114 N. Y. 222.)

*George Zabriskie* and *John S. Melcher* for Charles G. Stevens et al., as executors and residuary trustees, and Ellen S. Melcher, appellants. The General Term erred in reversing the judgment of the Special Term upon Mrs. Stevens' claim to be reimbursed the cost of the building erected by her on the lots Nos. 228 and 230 Fifth avenue, and in directing the payment of $90,000 to her out of the capital of the $1,000,000 trust legacy on that account. (Code Civ. Pro. § 1338; *Rindeau* v. *Bullock*, 147 N. Y. 269 ; *Koehler* v. *Hughes*, 148 N. Y. 507; *White* v. *Benjamin*, 150 N. Y. 258; *Putnam* v. *Ritchie*, 6 Paige, 390 ; *Taylor* v. *Baldwin*, 10 Barb. 582; *Thomas* v. *Evans*, 105 N. Y. 601; *Barry* v. *Ransom*, 12 N. Y. 462; *Wells* v. *Miller*, 66 N. Y. 255; *Grierson* v. *Mason*, 60 N. Y. 394 ; *Morgan* v. *Stevens*, 8 Abb. [N. C.] 356; *Herbert* v. *Herbert*, 57 How. Pr. 333.) The General Term erred in reversing the judgment at Special Term in so far as it charged premiums paid for insurance on the apartment house against the income of the trust estate, and in charging them against the capital. (*Crooke* v. *County of Kings*, 97 N. Y. 421; *Lerow* v. *Wilmarth*, 9 Allen, 382; *In re Albertson*, 113 N. Y. 434 ; *Insurance Co.* v. *Chase*, 5 Wall. 509; Perry on Trusts, § 527; 1 Phillips on Ins. 163;

Angell on Fire & Life Ins. § 73; 1 Wood on Fire Ins. 685; 1 May on Ins. § 80; *Bridge* v. *Bridge,* 146 Mass. 373; *King* v. *Talbot,* 40 N. Y. 76; *Catlin* v. *Grissler,* 57 N. Y. 363; *Jarvis* v. *Sewall,* 40 Barb. 449; *Moller* v. *Duryee,* 21 Wkly. Dig. 459; *Munoz* v. *Wilson,* 111 N. Y. 295, 297; *Waring* v. *Loder,* 53 N. Y. 581; *Kernochan* v. *N. Y. B. F. Ins. Co.,* 17 N. Y. 428.) The General Term erred in affirming the judgment entered in conformity with the referee's refusal to allow to the plaintiffs commissions on the amounts of money paid over by Mrs. Stevens, as executrix, to herself as beneficiary of the $1,000,000 legacy, and by the judgment credited to the estate and charged to the trust as so much paid for interest on the unpaid principal of that legacy. (Code Civ. Pro. §§ 2736, 2811; 2 R. S. 93, § 58; *McWhorter* v. *Benson,* Hopk. 28; *Vanderheyden* v. *Vanderheyden,* 2 Paige, 287; *In re Hayden,* 54 Hun, 197; 125 N. Y. 776; *Collier* v. *Munn,* 41 N. Y. 143; *McAlpine* v. *Potter,* 126 N. Y. 285; *Smith* v. *Buchanan,* 5 Dem. 169; *Lansing* v. *Lansing,* 45 Barb. 182; *Huddleston* v. *Kempner,* 87 Tex. 372; *Gist* v. *Gist,* 2 McCord Ch. 473; *Meacham* v. *Sternes,* 9 Paige, 398.) The judgment of the General Term, following the referee's report, erroneously holds that the legacy of $1,000,000 drew interest at the rate of seven per cent per annum to January 1, 1880, and thereafter at the rate of six per cent per annum. (*Cooke* v. *Meeker,* 36 N. Y. 15; *In re Stanfield,* 64 Hun, 277; 135 N. Y. 292; *Williamson* v. *Williamson,* 6 Paige, 298; *In re McGowan,* 124 N. Y. 526; *Duclos* v. *Benner,* 136 N. Y. 560; *In re Lasak,* 2 Con. 380; *Marsh* v. *Hague,* 1 Edw. Ch. 174; *Crocheron* v. *Jaques,* 3 Edw. Ch. 207; *Carson's Exrs.* v. *Jennings,* 1 Wash. C. C. 129; *Haight* v. *Pine,* 10 App. Div. 470; *Stewart* v. *Keteltas,* 36 N. Y. 388; *Mansfield* v. *N. Y. C. & H. R. R. R. Co.,* 102 N. Y. 205.) The judgment of the General Term, following the referee's report, is erroneous in holding that the $100,000 legacy to Mrs. Stevens drew interest from the death of the testator. (*In re McGowan,* 124 N. Y. 526; 2 R. S. 90, § 43; *Thorn* v. *Garner,* 113 N. Y. 198; *Lupton* v. *Lupton,* 2 Johns. Ch. 628; *Brown* v. *Knapp,* 79 N. Y.

136; *Lyon* v. *I. S. Assn.*, 127 N. Y. 402; *Cooke* v. *Meeker*, 36 N. Y. 15; *In re Stanfield*, 135 N. Y. 292; *Williamson* v. *Williamson*, 6 Paige, 298, 300; *In re Barnes*, 7 App. Div. 13; *In re Hodgman*, 140 N. Y. 421.)

*George Zabriskie* and *John S. Melcher* for same parties as above, respondents. No error has been committed by the courts below in holding that the payment of $125,000 of the principal of the Union Dime mortgage on the apartment house, by the executors, at the request of Mrs. Stevens and her trustees, operated as payment of a like sum on account of the principal of the $1,000,000 trust legacy. (*In re Gerry*, 103 N. Y. 445, 451; *Butterfield* v. *Cowing*, 112 N. Y. 486; *In re Niles*, 113 N. Y. 547; 1 R. S. 749, § 4; *Johnson* v. *Corbett*, 11 Paige, 265; *Jumel* v. *Jumel*, 7 Paige, 591; *Wadsworth* v. *Lyon*, 93 N. Y. 201; *Johnson* v. *Zink*, 51 N. Y. 333; *Murray* v. *Marshall*, 94 N. Y. 611.) It was rightly adjudged that the amounts charged by the several decrees of the surrogate against Marietta R. Stevens, and the several additional amounts of money collected, including the principal and the income of a part of the hotel investments, and received by her and retained by her to be applied to the payment of the legacy of $100,000, and of the interest on the $1,000,000 trust legacy, are to be applied to the payment and extinguishment of the said legacy of $100,000 and of the interest thereon, and on the said $1,000,000 trust legacy; and her proposed conclusion of law, that she is not chargeable on her said legacy or trust legacy, with any of the amounts charged to her as executrix, was properly overruled. (*In re Stevens*, 6 N. Y. Supp. 638; *In re Denton*, 103 N. Y. 607; *Hyland* v. *Baxter*, 98 N. Y. 610; *In re Hawley*, 100 N. Y. 206; 1 R. S. 729, §§ 60, 63; *Clute* v. *Bool*, 8 Paige, 83; *Campbell* v. *Foster*, 35 N. Y. 361; *Graff* v. *Bonnett*, 31 N. Y. 9; *King* v. *Orser*, 4 Duer, 431.) It was rightly decided by the judgment, following the referee's report, that the executors are not chargeable with the cost of the extraordinary repairs, amounting to $33,707.31, and that

this amount paid by them, at the request of the trustees, is to be treated as a payment on account of the principal of the trust legacy of $1,000,000. (*Pray* v. *Hegeman*, 98 N. Y. 351; *Jordan* v. *Van Epps*, 85 N. Y. 427; *Govin* v. *De Miranda*, 79 Hun, 329; *Newcomb* v. *St. Peter's Church*, 2 Sandf. Ch. 636; *Sandford* v. *Travers*, 40 N. Y. 140; *Harsha* v. *Reid*, 45 N. Y. 415; *Roberts* v. *N. Y. E. R. R. Co.*, 128 N. Y. 455; *Deffendarfer* v. *Dicks*, 20 Wkly. Dig. 507; *Weed* v. *Weed*, 94 N. Y. 243; *Shotwell* v. *Murray*, 1 Johns. Ch. 512.) The judgment of the General Term is right in affirming the judgment of the Special Term, that Mrs. Stevens is not entitled to any allowance for, or in respect to, the the moneys expended by Stanfield in making the changes and alterations on the premises leased to him by the trustees under the lease of October, 1879. (*Day* v. *Town of New Lots*, 107 N. Y. 148; *Romeyn* v. *Sickles*, 108 N. Y. 650; *McGean* v. *M. R. Co.*, 117 N. Y. 219; *Roberts* v. *N. Y. El. R. R. Co.*, 128 N. Y. 455; *Cogswell* v. *Cogswell*, 2 Edw. Ch. 231; *Bellinger* v. *Shafer*, 2 Sandf. Ch. 293; *Caldecott* v. *Brown*, 2 Hare, 144; *Dent* v. *Dent*, 30 Beav. 363.) No error was committed by the General Term in affirming the judgment of the Special Term that the money collected by Mrs. Stevens should first be applied in payment of interest and principal of the legacy of $100,000, and afterwards in payment of interest on the unpaid residue of the $1,000,000 trust legacy. (*W. S. Bank* v. *Town of Solon*, 136 N. Y. 465; *Isenhart* v. *Brown*, 2 Edw. Ch. 341.) The General Term committed no error in affirming the judgment, in so far as it adjudged that Mrs. Stevens was not entitled to set off commissions as executrix against the amounts with which she was charged as money collected by her and applied to her own use and not included in the accounts in the Surrogate's Court. (*Cook* v. *Lowry*, 95 N. Y. 103; *In re Harnett*, 15 N. Y. S. R. 725; *In re Conkling*, 2 Connolly, 176; *Brewster* v. *Demarest*, 48 N. J. Eq. 595; *Welsh* v. *Brown*, 50 N. J. Eq. 387; *Sherman* v. *Angel*, 2 Hill Eq. 26; *Mims* v. *Mims*, 39 Ala. 716; *Wither's Appeal*, 13 Penn. St.

582; *In re Bailey*, 47 Hun, 477; *Stevens v. Stevens*, 6 N. Y. Supp. 639.) The plaintiffs are entitled to the commissions awarded to them by the judgment. (*Halsey v. Van Amringe*, 6 Paige, 12; *Dakin v. Demming*, 9 Paige, 95; *Laytin v. Davidson*, 95 N. Y. 263; *In re Willets*, 112 N. Y. 289, 297; *Rowland v. Morgan*, 3 Dem. 289; *In re Roosevelt*, 5 Redf. 601; *McAlpine v. Potter*, 126 N. Y. 285; *Beard v. Beard*, 140 N. Y. 260; *In re Selleck*, 111 N. Y. 293; *In re Mason*, 98 N. Y. 527; *Hancox v. Meeker*, 95 N. Y. 528; *Hurlburt v. Durant*, 88 N. Y. 121; *In re Allen*, 29 Hun, 7.)

Haight, J. This action was brought for an accounting by the trustees under the will of Paran Stevens, with his executors, his widow and remaindermen. Paran Stevens died in the city of New York on the 25th of April, 1872, leaving him surviving the defendant Marietta R. Stevens, his widow, and Ellen S. Melcher, the wife of John S. Melcher, Mary Fiske Stevens, now the wife of Arthur H. F. Paget, and Henry Leiden Stevens, his only children and heirs at law. He left a last will and testament in which he bequeathed to his widow the sum of $100,000 to be paid to her out of his estate as soon as practicable after his decease, and by the fifth clause thereof he gave and devised to Charles G. Stevens, of Clinton, in the state of Massachusetts, and George F. Richardson, of Lowell, in that state, and to the survivor of them, the sum of $1,000,000, in which should be included at its fair value the premises known as No. 1 store, State street block, in the city of Boston, Mass., in trust, however, to hold, invest and manage the same as a trust fund and estate for the benefit of his widow during her natural life, and to collect the income therefrom and pay the same over to her, and upon her decease to divide the principal of such fund among his children in equal proportions, the issue of any deceased child taking the share their parent would have taken if living. Legacies were given by other provisions of the will which are not material to this controversy. By the eleventh clause he directed that the residue and remainder of his estate,

real and personal, should be divided by his executors into
three parts, one of which parts he gave to trustees, naming
them, in trust for his daughter Ellen, another part to trustees
in trust for his daughter Mary, and the remaining part to
trustees for the benefit of his son Henry. By the fourteenth
clause he authorized his executors to make conveyance to the
trustees of the several trust funds created in order to effect
the division contemplated and provided for and to erect the
several trust estates. He further authorized and empowered
his trustees of the several trust estates created by him to sell
and convey any real estate that may, at any time, form part
of such trust estate under their charge, respectively, and to
reinvest the proceeds thereof in other real estate in the states
of New York and Massachusetts, or in United States govern-
ment, or city or state securities, and hold the same upon the
same trust and for the same purpose upon which the estate so
sold was held. In the fifteenth clause he prohibited payments
to the *cestui que trust* in anticipation and required that such
payments should only be made after the same had accrued and
had been received by the trustees. He appointed his widow,
Marietta R. Stevens, his son-in-law, John L. Melcher, and
Charles G. Stevens, executors, and, upon the decease of
either of the two last named, he appointed George F.
Richardson as executor in such deceased executor's place.
The provisions made in his will for his widow were to be in
lieu of dower. The personal estate left by the testator
amounted to the sum of $316,773.37 as shown by the appraise-
ment and included his interest in the partnership of Darling,
Griswold & Co., as proprietors of the Fifth Avenue Hotel in
the city of New York, also his interest in the partnership of
Weatherby, Chapin & Co., as proprietors of the Revere and
Tremont Houses in Boston, and also his interest in the partner-
ship of J. E. Kingsley & Co., as proprietors of the Continen-
tal Hotel in the city of Philadelphia, which partnerships by
the terms of the will were to continue for the benefit of his
estate until the expiration of the terms of the several con-
tracts of copartnership. He also owned considerable real

71

estate in the city of New York and elsewhere, including the interest in each of the hotel properties above mentioned.

A question having arisen with reference to the power of the executors, an action was brought in the Supreme Court for a construction of the will, which resulted in an adjudication that the executors were authorized to retain the hotel interests and to continue so much of the interest as was invested therein if they should so elect; that it was the intention of the testator to charge his real estate with the payment of the legacies bequeathed by him, and that it was his intention to permit the trustees of the several trusts created by him, including the trustees of the million dollars left for the benefit of his widow, to accept real estate to be conveyed to them in satisfaction of such trust, and that his executors were authorized to satisfy any deficiency in the payment of the legacies caused by the retention of the hotel interests or otherwise, from the real estate left by the testator, and that his executors may satisfy the same by procuring a sale so far as necessary of the real estate, under the charge of the legacies, and so far as respects the million dollars left in trust for the benefit of his widow by conveying the necessary amount of real estate to her trustees at a valuation to be fixed and determined, there being included therein the premises known as No. 1 store, State street block, on State street, in the city of Boston, Mass.

At the time of the testator's death he was engaged in erecting and had substantially completed a building at the corner of 27th street and Fifth avenue, New York, known as the Stevens Apartment House, on which there was a considerable indebtedness, which, together with the legacies, would substantially exhaust the personal estate, leaving nothing out of which the million-dollar trust for the benefit of his widow could be set up except out of the real estate.

After a judicial construction of the will had been made the widow accepted the provisions made for her in lieu of dower, and then, on the 28th day of October, 1873, entered into an agreement with the executors and her trustees, under which the executors conveyed to her trustees, to apply upon the

million-dollar trust, the store known as No. 1 State street block, Boston, at $105,000, together with the premises known as the Stevens Apartment House, in the city of New York, a stable known as No. 3 East 28th street, and premises known as numbers 228 and 230 Fifth avenue, in the city of New York, valued at the sum of $450,000, aside from the mortgages thereon, which, together with the Boston property, amounted to $555,000. Upon the Stevens Apartment House property there was a mortgage for the sum of $425,000, and upon the premises Nos. 228 and 230 Fifth avenue were other mortgages, amounting to $140,000, making a total of $565,000. Henry L. Stevens died, unmarried, July 18, 1885, and Mrs. Stevens died after this judgment was entered, and the appeal herein on her behalf is prosecuted by the Union Trust Company, her executor.

The first controversy to which our attention is called arises with reference to the premises known as Nos. 228 and 230 Fifth avenue. Upon these lots were two dwelling houses which had been occupied for many years as residences and on which the lease had expired on the first day of May, 1873. They were incumbered with mortgages to the amount of $140,000, and were valued at about the sum of $150,000. The houses were badly out of repair, and in that condition they were incapable of yielding a rent sufficient to pay the taxes and accruing interests on the mortgages. At that date Mrs. Stevens, the widow, took possession of the lots, and on the conveyance thereof to her trustees as a part of her trust estate, she entered into a written contract with one Barbara Jones in the name of the plaintiffs, as trustees, herself becoming one of the contracting parties, to erect upon the premises a new building corresponding with, and to be made a part of, the Stevens Apartment House which they adjoined. At first the plaintiffs refused to become parties to the contract, or to execute the same, but finally, at the suggestion of counsel that it was necessary for the interest of the contractor that they should become parties to it, they agreed to do so on being indemnified by Mrs. Stevens against liability. Such guaranty

was indorsed upon the contract and executed by her, and thereafter the contract was executed by the plaintiffs and a new building was constructed at an expense of $130,000, and became an important part of the apartment house and largely increased its revenue and added to the value, at that time, of the premises at least $90,000.

The referee has found as facts that the plaintiffs did not consent to the tearing down of the old buildings upon the premises; that they disapproved of the same; that upon learning of Mrs. Stevens' intention to improve the premises, they expressed their disapproval thereof, and endeavored to dissuade her from doing it and objected to its being done on their account or responsibility; that she made such changes without any belief or expectation on her part that she had any legal claim for reimbursement; that it was done by her to increase the income from the premises and of the apartment house adjoining thereto.

Mrs. Stevens claims that the amount expended by her in constructing the new building and making it a part of the apartment house, or at least so much thereof as added to the permanent value of the premises, should be allowed to her and charged against the million-dollar trust. The referee found against her with reference to this claim, but the General Term has reversed the judgment entered upon his report so far as this item is concerned, and has allowed the claim. The General Term, in its order of reversal, has neglected to state that it reversed upon the facts, and we must consequently assume that the reversal was upon the law. We are, therefore, upon this review, bound to assume that the facts are as found by the referee.

The argument upon this question has covered a broad field, involving the rights of tenants in common, life tenants, remaindermen and trustees for tenants for life and remaindermen. Numerous authorities have been cited with reference to these various relations. It is quite possible that the same general rule exists with reference to all persons occupying these different relations, except as to trustees who derive

special powers from a will or deed of trust, whose duties are regulated thereby. In view of the fact that the rights of persons occupying these relations have recently been considered by this court in the case of *Cosgriff* v. *Foss* (152 N. Y. 104), we do not deem it necessary to here enter upon any elaborate consideration of the authorities.

Ordinarily the duty devolves upon tenants in common in possession, life tenants, or trustees for equitable life tenants, of preserving the premises, defraying the expenses of ordinary repairs, and of paying the taxes and the accruing interests upon mortgages which may incumber the premises. (*In the Matter of Albertson*, 113 N. Y. 434, 439.) They are not, however, compelled or required to bear the whole expense of permanent improvements required by the state or municipal authorities, such as assessments imposed for flagging a sidewalk. (*Peck* v. *Sherwood*, 56 N. Y. 615.) And, where relief is sought through a court of equity, and special equities exist in favor of a party who has made permanent improvements which were necessary for the preservation of the property, an allowance may be made therefor. (*Ford* v. *Knapp*, 102 N. Y. 135.)

At common law a tenant in common or a tenant for life, who had made permanent improvements, as distinguished from ordinary repairs, upon the common property of his co-tenant or that of his remainderman, could not recover of his co-tenant or remainderman his expenditures for that purpose. Courts of equity, however, were more liberal, adopting the principle that a party who asks for equitable relief will be required to do what is equitable himself, and where special circumstances give rise to strong equitable rights, relief may be afforded. (*Putnam* v. *Ritchie*, 6 Paige, 390.) But where two remaindermen, without the consent of the others, but with the consent of the life tenant, erect buildings upon premises under an agreement with the life tenant that they may receive the rents from the buildings, it was held that the remaindermen who thus improved the property were not entitled to compensation therefor out of the shares of their

co-tenants, it appearing that the rents received largely exceeded the value of the buildings, and that there were no equities in favor of the remaindermen who had made the investment voluntarily, with full knowledge of the facts and without any inducements offered by their co-tenants. (*Cosgriff* v. *Foss, supra.*)

Perry on Trusts, at section 477, says: "A trustee with power to manage real estate for a person absolutely entitled, but incapable, from infancy or otherwise, of giving any directions, may make repairs, but he cannot go beyond the necessity of the case, at the peril of having his expenses disallowed. If there is a legal tenant for life and remainder over, the tenant for life cannot waste and must not suffer the buildings to fall into decay. But whatever may be the rights or liabilities of a legal tenant for life, the trustees of an equitable tenant for life cannot interfere with the possession of the equitable tenant for any repair, unless they are clothed with especial *powers of managing the life estates.*" (See, also, Lewin on Trusts [9th ed.], 643 ; *Thomas* v. *Evans,* 105 N. Y. 601; *Cogswell* v. *Cogswell,* 2 Edwards' Ch. 231 ; *Green* v. *Winter,* 1 Johnson's Ch. 26 ; *Bellinger* v. *Shafer,* 2 Sandford's Ch. 293.)

It will thus be seen that attention must be given to the special powers given to trustees by the will. Such provisions are not infrequent, and, when found, they must control the trustees' powers and duties. If the trustee under the will is given power to invest in real estate, or to build upon lands already belonging to the estate, all parties are bound thereby, be they life tenants, beneficiaries of a trust or remaindermen.

If we were to treat Mrs. Stevens as a life tenant, and limited in authority to the rules of the common law, there might be some difficulty in sustaining the conclusion reached by the General-Term with reference to this item of her claim, but such does not appear to be her relation to the estate. The testator did not see fit to give her the possession and control of the million-dollar trust, or of the real estate set apart for and composing that trust ; but, instead thereof, gave the same to

others, in trust, to "hold, invest and manage" during her life, to collect the income and the receipts therefrom and pay to her, and, upon her decease, to divide the trust estate or fund among the remaindermen specified. The trustees were thereby made the owners and given the possession of the trust estate, and as such had certain duties to perform with reference thereto; they were required to invest and manage so as to produce an income for Mrs. Stevens, and to care for and preserve the principal of the estate for the benefit of the remaindermen. The relation of Mrs. Stevens was that of life beneficiary under the trust, the *cestui que trust* of her trustees.

The provisions of the will do not specifically specify the items of property which should be turned over to the trustees to constitute the million-dollar trust, further than the store number one of State street block, Boston, Massachusetts. Under the construction judgment the executors were empowered to agree with the trustees to accept real estate in the place of currency, and to the extent already mentioned, real estate was conveyed by the executors to the trustees. It evidently was understood by the testator that the trust estate might be made up in part of cash and in part of real estate. In the fifth clause he empowers his trustees to hold, invest and manage the same; and in the fourteenth clause he authorizes and empowers the trustees and the survivor or survivors of them, "to sell, convey, make, execute, acknowledge and deliver, by proper and necessary deeds of conveyance, any and all real. estate which may at any time form part of said trust estates under their charge respectively, and to reinvest the proceeds only, either in other real estate in the states of New York and Massachusetts, or in United States government or city or state securities, and to hold the same upon the same trusts and for the same purposes, for and upon which the estate so sold was held, and so, from time to time, when they shall deem expedient, to sell and reinvest as aforesaid." It is contended with reference to these provisions that the authority to invest in real estate by the trustees was limited to the proceeds received from the sale of other real estate; but it appears to us that

this would be rather too strict a construction to place upon the provisions. · No reason is apparent why the testator should authorize the investment in real estate of money derived from one source, and not money derived from another source. The first provision of the will, to which attention has been called, is general and without limitation ; the trustees are " to hold, invest and manage." If this provision related to money only, there might be some doubt as to the authority to invest in real estate ; but we must bear in mind that the testator's estate con-sisted chiefly of real property ; that his personal property was only sufficient to pay his debts and the legacies bequeathed by him, and that there was nothing out of which the trusts could be established aside from the real property and the income therefrom. It was evidently this condition of affairs that induced the testator to give authority to his trustees to invest and manage without limitation. Undoubtedly, this clause must be read in connection with that included in the four-teenth item of his will. This clearly has reference to the sale of real estate forming a part of the trust estate ; it gives to the trustees full power to sell and convey whenever they shall deem expedient ; it also gives them power to reinvest the pro-ceeds in other real estate in the states of New York and Mas-sachusetts, or in United States government or city or state securities. Here we have the first limitation imposed upon the trustees with reference to investments. It is said that the word " only " relates to the proceeds derived from the sale of real estate, but it is not clear to us that such was the intention ; it would rather appear that it related to the investments author-ized and to the limitations imposed by requiring such invest-ments to be made *only* in other real estate in the states of New York and Massachusetts, or in United States government or city or state securities. The limitation here imposed doubt-less has reference also to the power to invest given by the former clause of the will, which, considered in connection with this, would seem to indicate an intention on the part of the testator to give to his trustees the power to invest any part of the trust in real estate in the states of New York and

Massachusetts, or in United States government or city or state securities.

The erection of a building upon the lands of an estate is equivalent to an investment of the proceeds of the estate in the purchase of other lands. *In re Newman* (L. R. [9 Ch. App.] 681) Lord Justice JAMES says : " The erection of a building is substantially the same thing as the purchase of a new estate." And in *Drake* v. *Trefusis* (L. R. [10 Ch. App.] 364) it was held that money which, under the provisions of a deed or will, is to be invested in the purchase of land will, in a proper case, be ordered by the court to be employed in erecting new buildings on land already devoted to the same uses.

We think, therefore, that the trustees had the power, under the will, to invest the proceeds of the trust committed to their charge in building upon the real estate forming a part of the trust estate when it could be reasonably anticipated that such investment would be beneficial to the remaindermen and to the life beneficiary.

As we have seen, the real estate known as " 228 and 230 Fifth avenue" was occupied by two houses, which were badly out of repair and in such a condition as to be incapable of yielding sufficient rent to pay the taxes and accruing interests on the mortgages. It appears from the testimony that during the year intervening after the death of the testator and the time that they were vacated, on the 1st day of May, 1873, the income derived from the lots fell short upwards of nine thousand dollars of the sum required to pay the interest and taxes. It will thus readily be seen that something had to be done, if these lots were to be preserved for the estate. A situation was presented very different from the cases where the real estate has produced an income sufficient to maintain it, although small and leaving but little profit for the life tenant or the beneficiary of. the trust. The lots were centrally located upon Fifth avenue, of great value, and it was reasonably anticipated that they might be of still greater value. It was the duty of the trustees, if possible, to preserve them for

the benefit of the remaindermen, and at the same time make them produce an income sufficient to render them self-sustaining and an aid to the life beneficiary. It was under such circumstances that the new building was constructed upon these lots, at an expense of $130,000, which was made a part of the apartment house which the referee has found largely increased its revenue and added to the permanent value, at that time, of the premises, at least $90,000.

It is contended that the building was constructed by Mrs. Stevens, and not by the trustees. It appears that she furnished the money and paid for the construction of the building; that she conceived the idea, procured the plans and took an active part, at least, in the making of the contracts and the procuring of the construction of the building. There appears to be some controversy as to whether the money furnished by her was her own or that which had come into her hands as executrix of the estate; but, under the view taken by us, the determination of this question is unimportant; for in either case her situation or rights with reference to the claim would be the same. We must here bear in mind what has before been stated — that the testator did not see fit to intrust her with the possession or management of the property. That he gave to the trustees; its care and management devolved upon them, and they could not, without violating the trust reposed in them, leave it to her care and management; for that was one of the things that the testator determined should not be done.

It appears that she first went upon the premises and tore down the old buildings; that she then entered into a contract with one Barbara Jones to construct the new building. It also appears that this was done without the consent or approval of the trustees; but it nevertheless appears that they finally yielded, submitted their judgment to hers and executed the contract for the new building. It is true that Mrs. Stevens indemnified them against any liability therefor, but this guaranty had reference to personal liability, and not the liability which they of necessity assumed as trustees of the

estate. As such trustees they had no money with which to
pay for the structure. The real estate mentioned had been
conveyed to them by the executors and had become a part of
the trust estate, but no money had been paid over to them at
that time; it was but natural, therefore, that they should seek
indemnity against personal liability. The fact, however,
exists that upon Mrs. Stevens undertaking to furnish the
money with which to pay for the building, they joined in the
contract with Barbara Jones for the construction of the build-
ing, thereby giving to the proposed improvements their
approval; and from that time on the construction must be
deemed to be their act and done in the exercise of their judg-
ment as trustees.

It is said that the changes were made without any belief or
expectation on the part of Mrs. Stevens that she had any legal
claim for reimbursement. But it is not apparent how her
mental operations or her expectations in the matter affect her
legal or equitable rights. It is not pretended that she agreed
with the trustees that she would pay for the new building and
would make no claim for reimbursement, or that she under-
took the construction of the building under any such agree-
ment. Her expectations with reference thereto are, therefore,
no obstacle to her recovery.

Under the finding of the referee the value of the property
at that time was increased in the sum of ninety thousand
dollars, but it is said that it does not appear that the value of
the property was permanently increased in that sum. There
is, however, no finding that the increased value was not
ninety thousand dollars at the time of the trial. It appears
from the finding that the structure cost $130,000, and that
it added at least ninety thousand dollars to the value of the
property. A building is commonly known as a "permanent
improvement." It is quite possible that this is a misnomer
and that there is no such thing as a permanent improvement.
We are aware that things are subject to decay and deteriora-
tion, but the improvement was so far permanent as to be
recognized in the law as such, and as we understand the find-

ing, it is that the property was permanently improved in the amount named.

Mrs. Stevens' right to be allowed the ninety thousand dollars and to have the same charged to the million-dollar trust as an investment by the executors, is dependent upon the broad principles of equity. There are many cases in the books in which relief of this character has been refused; many others in which it has been granted. Each case is largely dependent upon the circumstances and special equities surrounding it, which may bring it within, or distinguish it from, general rules. After a careful examination of the authorities, we have reached the conclusion that in this case Mrs. Stevens' equities are such that her claim should have been allowed, and the ninety thousand dollars charged to the trust estate.

Another controversy has arisen with reference to the Stevens Apartment House, so called. After the erection of the new building upon lots 228 and 230 Fifth avenue a crack was discovered in the Fifth avenue front of the apartment house on the line of the party wall between it and No. 230 Fifth avenue, and subsequently it was discovered that the wall of the apartment house had settled. A thorough examination of the condition of the building was then made which resulted in the discovery of serious defects. The foundation of the south wall was insufficient to support the superstructure and was laid on a soft, muddy bottom without sufficient support, by piles or otherwise, to prevent it from sinking, and the arches over the windows of the north and west sides on 27th street and Broadway were too weak to support or withstand the pressure from above. So serious were the defects that the building was considered dangerous to the public as well as to the occupants, and the building department of the city gave formal notice that it must be repaired. These defects existed at the time the property was conveyed to the plaintiffs as trustees, but were then unknown and undisclosed. The plaintiffs, as trustees, did not have sufficient funds to make the necessary repairs. In this condition of affairs they called

upon the executors to advance the necessary money, which they did with the understanding that it was without prejudice to the question upon what parties or fund the cost should be charged. The plaintiffs then entered into a contract with D. C. Weeks & Son to make the necessary repairs, which was done at an expense of $33,707.31, which sum was charged to the plaintiffs by the executors as so much paid by them on account of the million-dollar trust.

The referee held that this charge was proper. It is, however, insisted by Mrs. Stevens that she ought not to suffer by reason of the latent defects in the construction of the building, unknown to her at the time of the conveyance of the property to her trustees; that it operates to reduce her trust estate in the amount of the cost of such repairs, thereby depriving her of an annual income therefrom amounting to about the sum of $2,000 per year, without fault on her part or that of her trustees.

The claim of Mrs. Stevens strongly commends itself to a court of equity. The General Term recognized its justness, but appears to have been of the opinion that there was an estoppel by reason of the construction judgment. Undoubtedly an estoppel of a former judgment extends to every material matter within the issue which was expressly litigated and determined, but in that action no issue was joined with reference to the value of these premises. The action was prosecuted for the purpose of obtaining a construction of the will, and of ascertaining whether the trusts created by it were chargeable upon the real estate, and whether real estate could be conveyed by the executors to the trustees in satisfaction of such trusts. After the determination of these questions the court, at the request of the parties, did take evidence with reference to the value of the different parcels of real estate owned by the testator in his lifetime, and did supplement the judgment with a permit to the executors to convey, and to the trustees to receive, property at the values found for the different parcels. This, however, was permissive only, leaving it to the final agreement between the parties, and was not in any

sense a judgment, intended to be binding upon the parties, further than to justify the action of the executors and the trustees should they finally conclude to act thereunder.

Here, as we have seen, was a mutual mistake of fact, unknown to the parties and unknown to the court that rendered the judgment in the former action. It was a hidden, latent defect in the structure of the building, which rendered it dangerous and liable to fall, seriously affecting its value, and it does not appear to us that there is any provision in the construction judgment which operates as an estoppel against any claim for relief which Mrs. Stevens may be able to maintain.

It is now insisted, on behalf of the executors, that the premises were conveyed to the trustees by deed without covenant, and that, consequently, there has been no breach of covenant upon which an action can be maintained for damages. Very likely this is so. But Mrs. Stevens is not here prosecuting an action at law to recover damages; she is appealing to a court of equity to adjust an account, and to determine to which party it should be charged. The account arises out of an estate of a deceased person, between executors, trustees, a beneficiary under a trust and remaindermen. A court of equity has acquired jurisdiction, and, having jurisdiction, it may do equity between the parties.

The defect in the building was discovered whilst Mrs. Stevens was in Europe, and the trustees were required to act with reference thereto in her absence. The building department of the city had ordered the repairs, and the trustees had no money with which they could be made. Under such circumstances, they appealed to the executors to furnish the necessary money. The executors, evidently recognizing that the estates which they represented might be held liable, advanced the money, with the understanding that it was without prejudice to the question upon what parties or fund the same should be charged, thus leaving the question open for the determination of a court of equity in case the parties should be unable to agree. No fault is chargeable upon the executors, neither is there blame attributable to the trustees; they

acted with prudence and with an evident desire to protect the estates which they severally represented, leaving the matter open for judicial adjustment.

It is insisted that the trustees had no remedy for relief. In the shape in which the question is presented, it, perhaps, is unimportant to inquire whether or not a remedy was open to them; for, as we have shown, equity has acquired jurisdiction and can now make the proper charge. But we think there was a remedy available. The defect in the construction of the building was hidden and unknown; there was a mutual mistake of fact with reference to its condition. Upon the discovery of the defect, the trustees could have rescinded the contract under which the conveyance was made to them, and could have compelled the executors to take back the premises. In *Marvin* v. *Bennett* (8 Paige, 312), Chancellor WALWORTH says: "Courts of equity sometimes give relief in cases of mutual mistakes, unaccompanied by fraud, when the property which one party intended to sell and the other intended to buy did not in fact exist; or where the subject-matter of the sale and purchase is so materially variant from what the parties supposed it to be that the substantial object of the sale and purchase entirely failed."

In *Dale* v. *Roosevelt* (5 Johnson's Ch. 174) lands were conveyed upon a contract to pay a thousand dollars annually for twenty years, upon the representation and understanding that they contained a coal mine within their boundaries. It was subsequently ascertained that the parties were mistaken; that the coal mine was upon adjoining lands, but did not extend upon the lands conveyed. It was held that the plaintiff was entitled to relief. (See, also, *Fritzler* v. *Robinson*, 70 Iowa, 500; *Hurd* v. *Hall*, 12 Wisconsin, 112; *Griffith* v. *Sebastian County*, 49 Arkansas, 24; and *Barth* v. *Deuel*, 11 Colorado, 494.)

It appears to us that the costs of these repairs should be charged to the executors, and the million-dollar trust should be relieved therefrom.

A controversy has also arisen with reference to the insur-

ance. The plaintiffs, as trustees, have from time to time procured insurance upon the Stevens Apartment House and the building constructed upon the lots adjoining, in a sum ranging from $350,000 to $550,000, and have expended in premiums therefor upwards of $31,000. It is found by the referee that the rates at which the insurance was effected were reasonable and moderate; that the companies were solvent and in good standing; that the amount was not unreasonable, or greater than was necessary to protect the property or the parties interested in it. He found as a conclusion of law that the premiums paid by the plaintiffs should properly come out of the income from the property, and were chargeable to Mrs. Stevens. The General Term reversed the judgment so far as this item was concerned, and directed it to be apportioned between the life tenant and the remaindermen, by charging it to the capital of the trust fund.

The authorities upon this question do not appear to be in precise harmony. In *Peck* v. *Sherwood* (56 N. Y. 615) the case arose upon an accounting before a surrogate. A municipal assessment had been made for flagging the sidewalk in front of premises which had been devised for life, with a remainder over, and insurance had been effected by the executor in trust. It was held that the flagging was not in the nature of an annual tax to be paid by the tenant for life, but that the tax, with the expense of insurance and of lightning rods which had been placed upon the buildings, should be apportioned between the life tenant and the remainderman. The opinion contains no discussion with reference to the reasons entertained for so apportioning the insurance further than the bare statement that the apportionment should be made.

In the *Matter of Albertson* (113 N. Y. 434) the question also arose upon a judicial settlement of the accounts of an executor, made under a will, by which the testator gave his residuary estate to trustees, to apply the rents, income and profits to the use of his widow during her life, and he directed his trustees to pay, after her death, out of the capital, certain legacies, and

to distribute the remainder among certain persons named. In that case insurance had also been effected, but the chief question in controversy related to the taxes imposed and the interests accruing upon a mortgage upon the premises. The accounts referred to taxes and interest on the mortgage, and included premiums paid on insurance. It was held that the accounts should be paid out of the income of the life tenant, and that they should not be charged to the remainderman. GRAY, J., in delivering the opinion of the court, says, the general rule is that, as between the life tenant and the remainderman, the former is bound to pay the taxes imposed and the interest accruing upon a mortgage; that the usual purpose of a testator in providing for a beneficial interest in a trust estate is, that the net income shall be applicable only, and that the *corpus* or capital of the trust estate shall remain intact until the trust shall have determined.

In *Lerow* v. *Wilmarth* (9 Allen, 382) real estate had been conveyed to Wilmarth in trust for the benefit of his wife and children and the survivor of them during their lives, with a reversion to himself after their death. He procured insurance upon the premises in his name as trustee, to an amount not exceeding the value of the life estate. A fire occurred, and the insurance was paid over to him and deposited in a bank in his name as trustee. A creditor of his sought to reach the fund. It was held that it belonged to the *cestui que trust* and not to him. BIGELOW, C. J., said: " The facts stated in the exceptions showed that the money received from the insurance companies by the defendant did not belong to him, but came into his hands as trustee for his wife and children, who were beneficial and equitable owners thereof."

In the case of *Bridge, Executor, etc.,* v. *Bridge* (146 Mass. 373) a testator gave to his wife an annuity of four hundred dollars, if the income from his estate should amount to that sum; he also devised to her the use during life of the house in which they had lived, or another suitable house elsewhere, if she desire. The widow continued to live in the house, and the executor deducted from the gross income applicable to

73

the payment of the annuity the amount paid out for repairs, taxes, water rates, insurance and the interest on a mortgage on the house. It was held, on appeal from a decree of the Probate Court allowing the account, that the annuity was to be paid out of the net income, and that the deductions were rightly made.

In Wood on Insurance, section 306, it is said : " A trustee is not in law bound to insure, but he may do so, and if he does, the insurance inures to the benefit of his *cestui que trust.* * * * Money received by a trustee upon a policy covering the trust property is the property of the *cestui que trust*, and cannot be attached as money of the trustee upon his debts."

Perry on Trusts, section 487, says : " A trustee would proba-bly be justified in insuring the property, and, in case of loss, the insurance would belong to the *cestui que trust*." And again, at section 553, he says : " Both the equitable tenant for life and the remainderman have an insurable interest in the trust estate ; and if one insures his own interest in the build-ings, and they are burned, neither can call upon the other for any part of the insurance money. The trustee also has an insurable interest in the buildings upon the trust estate, and if the buildings are entirely destroyed by fire, the insurance money received is so far a conversion of the property into personalty that the trustee cannot rebuild, unless he is specifi-cally directed by the instrument of trust to do so ; but the money so received must remain personal property, and the tenant for life and the remainderman will receive their respec-tive rights and interests according to the terms of the settle-ment. If a building is partially burned or injured, and the trustees have an insurance policy, they should apply the money to·the repair of the building." The statement here made with reference to the rights and duties of the trustees would appear to be somewhat in conflict with the rules stated under the former section alluded to ; but, on referring to his citations of authority, we find that it was made upon the authority of *Haxall's Executors* v. *Shippen* (10 Leigh, 536 ; *S. C.*, 34 American Decisions, 745). In that case it appears that the

insurance was effected by the testator in his lifetime, and the buildings were destroyed by fire after his death. It was in that case held that the money derived from the insurance became personal property and a part of the capital of the estate, and that the widow, who was made tenant for life, could receive the income only, the capital going to the remaindermen. So much for the authorities bearing upon the question.

It is said that these premises were covered by mortgages to the extent of $565,000, and that they contained covenants to the effect that the buildings erected upon the premises should be kept insured in some incorporated company of good standing against loss or damage by fire, and the policies assigned to the parties holding the mortgages. The amount of the insurance which was effected for the purpose of protecting the mortgagees does not distinctly appear; it was stated by the General Term to amount to $235,000. The Union Dime Savings Institution mortgage required an insurance in at least $250,000. It is claimed with reference to the insurance which was made for the benefit of the mortgagees that, in case of fire, the mortgagees would collect the insurance, apply it in satisfaction of their mortgages and thus it would inure to the benefit of the remaindermen; but this does not appear to us to be a conclusive answer to the question. The mortgages were existing incumbrances, created by the testator in his lifetime, with an obligation to insure. The premiums paid for the insurance were as essential to keep the mortgages alive and prevent foreclosure as was the payment of interest accruing upon them, and, if this be so, no reason is apparent why the income of the estate should not bear one burden as well as the other.

As to the insurance procured over and above that required by the mortgagees, it does not appear that it exceeded in amount the value of the life estate, or that the trustees procured the same for the benefit or on account of the remaindermen. It does appear that they consulted with Mrs. Stevens with reference to it, and that it was procured with her

knowledge and consent. Our conclusion is, that the amount was properly chargeable to the income, and not to the capital of the trust estate.

The parties appear to be dissatisfied with the rate of interest allowed by the referee. Under the agreement of October 28, 1873, made pursuant to the judgment construing the will, it was provided that until the residue of the trust fund is set up, Mrs. Stevens should receive " the interest to which she is in law entitled on the unpaid part of her trust legacy." At this time the rate of interest allowed by law was seven per cent. After the first ·day of January, 1880, it was by law reduced to six per cent. The referee allowed her interest at the rate of seven per cent until the new law took effect and thereafter allowed her the new rate. It is contended on her part that the rate of interest was founded on contract, and that she was entitled to receive seven per cent until the entire trust fund was set up. We do not, however, think that this claim can be maintained. " The interest to which she is in law entitled," evidently means, and was intended to be, the interest which the law allowed at the time it accrued. The executors insist that, inasmuch as the interest was payable out of the income from the real property, she was entitled to recover only a rate of interest equal to such income; that it now appearing that the other real estate held by the executors yielded an income of less than two per cent upon its appraised value, the rate of interest to be allowed her should be regulated accordingly. Mrs. Stevens was entitled to have her million-dollar trust set up within a reasonable time after the testator's death. The referee has refused to find that the failure to so do was attributable to her. The executors could at any time have relieved the estate from the burden of paying interest upon the trust legacy by turning over to the trustees the balance remaining unpaid. Failing in this, they were properly charged with interest at the lawful rate.

It is further contended on behalf of Mrs. Stevens that an improper basis of computation of interest was adopted with

reference to the payment made to her of the $100,000 legacy. She, as executrix, had from time to time received money from the estate, which was charged up against her as a payment upon this legacy. The interest upon the legacy was computed until the amount collected by her equaled the interest; it was then credited as a payment upon the legacy, and the interest computed upon the balance until another payment was in like manner so credited. She claims that, as executrix, she was not chargeable with interest on the amounts collected by her from the estate, and that she was consequently entitled to the interest upon the entire $100,000 legacy, but, inasmuch as she applied the money so collected from the estate to her own use, it appears to us that the referee properly disallowed this part of her claim, and that the computation made by him should be approved.

It is further contended on behalf of Mrs. Stevens that the referee should have credited Mrs. Stevens with the value of the permanent improvements made by Stanfield in converting the apartment house into the Victoria Hotel, and that the referee erred in excluding the testimony offered by her to establish the value of such improvements. On the first day of September, 1879, the plaintiffs, as trustees for Mrs. Stevens, leased to Stanfield the property then known as the Stevens Apartment House, with the addition made thereto by the building constructed upon the adjoining lots, to which reference has been made, for and during the natural life of Mrs. Stevens, at an annual rental of $70,000. Under the provisions of this lease it was arranged that Mrs. Stevens should purchase an adjoining lot to the apartment house and erect a building thereon and furnish a dining room, to be used in connection with the apartment house and lease the same to Stanfield; that he agreed to make permanent improvements upon the property, changing the entire structure from an apartment house to a hotel. Mrs. Melcher, however, refused to join in the lease and Stanfield thereupon required Mrs. Stevens to enter into a bond of indemnity in the sum of $100,000 to protect him against a loss which would accrue to him in making

the contemplated permanent changes in the building if her life should terminate before the expiration of ten years, and thus prevent him from securing the returns he anticipated for his expenditures. The contemplated changes were made at an expense of about $75,000, and the name of the building was changed to the Victoria Hotel, and was for more than ten years thereafter conducted by Stanfield at the rental agreed upon. Mrs. Stevens' life was prolonged for more than ten years thereafter, and consequently her estate was subjected to no loss by reason of the refusal of Mrs. Melcher to join in the lease. The changes made in the building were not paid for by her and we do not think that it can properly be said that the cost therefor came out of the rent. The tenant made the changes for his own benefit and profit. He required a term of at least ten years in order to reimburse himself out of the improvements made by him. Had Mrs. Stevens' life been cut short within the ten years and her estate compelled to reimburse Stanfield under the bond of indemnity given, a different question would have been presented, but under the facts as presented we think she suffered nothing, paid nothing, and that there is no basis upon which this claim could have properly been allowed.

It is asserted on behalf of Mrs. Stevens that the contract of October 28th, 1873, under which the Stevens Apartment House with adjoining property was conveyed to her trustees, was in excess of the authority committed by law under the will of the testator to the parties, and that to the extent of such excess has been illegally acted upon. The contract, as we have seen, was entered into shortly after the determination of the construction action, so called, in which the value of the several parcels of real estate owned by the testator had been ascertained and determined and authority given to the executors to transfer real estate to the trustees in payment for the million-dollar trust. The contract was evidently entered into for the purpose of carrying into force the authority given to the executors in that judgment. It is quite possible that the plaintiffs as trustees of the fund and Mrs. Stevens suffered

by this arrangement, but after accepting the conveyance of the property, entering ito its possession and using it for their own benefit and advantage for nearly twenty years, we think it too late to now raise the question of excess of authority. The parties have slept upon their rights for too many years. The property has been enlarged and improved and the situation is so changed that it would be practically impossible to restore the parties to their original rights.

A controversy has arisen with reference to the commissions. The referee found as facts that Mrs. Stevens had not faithfully discharged her trust as executrix ; that she had not kept up the accounts of her receipts and disbursements ; that she had not taken proper vouchers for disbursements made, and that she had promoted unnecessary and vexatious litigation and had insisted upon unjust and unreasonable claims ; that she has made frequent and unexplained changes of counsel, whereby the trial of this action has been greatly prolonged, and other parties interested in the estate have been put to great expense and delay in obtaining a settlement, and that by reason of her misconduct she should not be allowed commissions.   A vigorous assault has been made upon these findings, but this court, in its review of the case, is limited to questions of law, and we cannot go back of the facts found, especially if there is any evidence to support them.   Upon the findings made the conclusion of the referee should be sustained.   In *Cook* v. *Lowry* (95 N. Y. 103, 114) the question was considerd in this court.   Andrews, J., in delivering the opinion, says : " Commissions are allowed to trustees as a compensation for services in the execution of the trust, and in a case of gross neglect or of unfaithfulness, we think the court may properly disallow them." (See *Estate of Harnett*, 15 N. Y. St. Rep. 725, and 3 Redf. on Wills, 554, and cases there cited.)

The plaintiffs complain of the refusal of the referee to allow them commissions on the amounts of money paid over by Mrs. Stevens, as executrix, to herself, as beneficiary of the million-dollar legacy.   They were allowed commissions on so much of

the *corpus* of the trust fund as had been received by them. We think the referee properly disposed of this question.

As to the other questions brought up for review, we think they were properly disposed of below.

The judgment of the General Term should be modified by charging to the executors the sum expended in repairing the foundation walls of the Stevens Apartment House, and by crediting Mrs. Stevens with interest on the trust fund, of which she was deprived by charging the expenses of such repairs to the trust; also by charging to Mrs. Stevens the amount paid by the trustees for insurance, and, as so modified, affirmed, without costs of this appeal to either party.

If the attorneys are unable to agree upon the form of the judgment to be entered, it may be settled before HAIGHT, J., on three days' notice.

ANDREWS, Ch. J., O'BRIEN, MARTIN and VANN, JJ., concur; BARTLETT, J., concurs, except as to insurance, in regard to which he dissents; GRAY, J., takes no part.

Judgment accordingly.