RITA M. KOHLER WHITE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

VERA M. KOHLER ALKER (SUBSTITUTED FOR VERA M. KOHLER ERBE), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

OLGA K. MIGLIETTA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 36112, 36113, 36379.   Promulgated May 25, 1931.

*R. Kemp Slaughter, Esq.*, and *Hugh C. Bickford, Esq.*, for the petitioners.

*Harold Allen, Esq.*, for the respondent.

396

SEAWELL: The issue with which we are concerned arises on account of the trusts referred to in our findings as A, B, C and D, which were created under the terms of the will of Charles Kohler. The decedent died on June 4, 1913, leaving a large estate, and by the terms of his will provided that a portion thereof should be set aside which would be sufficient to produce income for each of the petitioners during the life of each of them in the amount of $25,000. A similar provision was made for his widow, who is not a petitioner in

this proceeding. The trusts were not created until after extended court proceedings which terminated in 1921 with a decision by the Court of Appeals of the State of New York. The trusts were then created and the trustees received property on account of each trust of some $680,000. Included in the property so received were two leaseholds of the respective values of $100,000 and $185,000, and one-fourth of the value of each leasehold was included in the trust for each daughter and one-fourth for the widow. One lease expired in 1927 and the other in 1930. The remaindermen with respect to each of the trusts for the petitioners were the issue of the respective daughters. While we are not shown in detail the amount produced by each trust and the exact disposition thereof, our understanding is that substantial amounts were produced by each trust (computed by taking as a deduction the amount retained for amortization of the leaseholds) in excess of that required to pay the annual amount of $25,000 to each of the daughters (petitioners herein) and that pursuant to the decision of the Court of Appeals of New York (hereinbefore referred to) such excesses were paid to the respective daughters. And we understand further that similar excesses were produced by the trust for the widow and that these excesses were likewise paid to the daughters. In the fiduciary returns as filed by the trustees, the amount retained as amortization of the leaseholds was claimed as a deduction and the petitioners as beneficiaries reported in their returns the amounts so shown by the trustees, which were likewise the amounts distributed to them.

Our question is whether the action of the trustees in claiming a deduction for amortization of leaseholds was correct in arriving at the amount distributable to the petitioners and therefore taxable to them. The fact that the petitioners have reported in their returns the amounts distributed to them by the trustees is not conclusive as to the amounts upon which they are to be taxed, since the controlling statute (section 219 (a) (4) and (d) of the Revenue Act of 1921 and corresponding provisions of the Revenue Act of 1924) provide that the amount to be returned is that which, " pursuant to the instrument or order governing the distribution, is distributable to such beneficiary, whether distributed or not." Since the decision in *Baltzell* v. *Mitchell*, 3 Fed. (2d) 428 (certiorari denied, 268 U. S. 690), many cases have arisen before the Board with respect to the income upon which a life beneficiary is to be taxed, and we have held that where the trustees create an unauthorized reserve out of income to replace depreciable assets of the corpus of a trust estate, the amount so withheld is distributable and taxable to the life beneficiaries. *Estate of Virginia I. Stern et al.*, 7 B. T. A. 853, and *F. C. Hubbell et al.*, 14 B. T. A. 1040; affd., *Hubbell* v. *Commissioner*, 46 Fed. (2d) 446; certiorari denied, 283 U. S. 840. While the foregoing cases

dealt with depreciation of tangible assets, whereas the case at bar deals with exhaustion of leaseholds, we can see no difference in the principle which should be applied on account of the income withheld in either case. Unless, therefore, it can be said that the instrument providing for the distribution of the income authorized the trustees to retain an amount on account of the exhaustion of the leaseholds, the amount retained for that purpose would be taxable to the petitioners.

The instrument which provided for the distribution of income to the petitioners was the will of the decedent and, as we said in *Virginia I. Stern et al., supra,* it is to this writing which we must look in determining what was distributable to them. When we come to look at the will we are unable to find any provision which would show authority for the retention of the amount in question by the trustees. What the will provided was that a portion of the decedent's estate should be set aside sufficient to produce $25,000 annually for each of the daughters during their respective lives and that upon their respective deaths the residuary estate should go to their issue. The Circuit Court of Appeals of New York, in interpreting the will, recognized that it would be practically impossible for the trustees to set aside property which would produce exactly the amount required of $25,000 in each instance and that the trustees were justified in setting aside an amount which would be sufficient under all reasonable circumstances to produce the desired income. The said court held further, in effect, that since the daughters were the residuary legatees under the decedent's will to whom all property, other than that required for the creation of trusts therein named and for the satisfaction of certain specific bequests not here material, passed immediately and absolutely, the excess of any income produced by such trusts should be paid to the daughters. Under such circumstances, we fail to see authorization on the part of the trustees to provide for replacing exhausting or wasting corpus for the benefit of the remaindermen. As the court said in *Baltzell* v. *Mitchell, supra:*

\* \* \* The beneficiary is not interested in the capital of the trust, but only in the income. If there are accretions to the capital, these are not distributable as income, so that the beneficiary may receive any part of them; and if there are capital losses they cannot be made good out of the income. The capital may be depleted by such losses; but the income for that taxable year is not. It may in future years be diminished because of the diminution of the capital.

To a similar effect see *Whitcomb* v. *Blair,* 25 Fed. (2d) 528 (affirming *Louise P. V. Whitcomb et al.,* 4 B. T. A. 80), where the court held that the trustee of a testamentary trust can not withhold any part of the life tenant's share of income of the trust estate in order

to make good exhaustion or wear and tear of capital assets, since losses in such cases fall on the reversioners or remaindermen. See also *Roxburghe* v. *United States*, 64 Ct. Cls. 223, and *Abell* v. *Tait*, 30 Fed. (2d) 54. The situation here involved is to be distinguished from the one considered in *Merle-Smith* v. *Commissioner*, 42 Fed. (2d) 837, where the life beneficiaries had an interest in the corpus as remaindermen and a depletion deduction was allowed. In that case the court distinguished the case of *Roxburghe* v. *United States*, *supra*, in which a depreciation deduction was not allowed on the ground that the life beneficiary had no interest in the corpus and " was merely a beneficiary entitled only to income of the trust created for her life."

In the foregoing cases where the deduction was not allowed, the income from the trust was to be paid to the life beneficiary during his natural life with remainder over (usually to his issue), and the same is true of the case at bar, except that the life beneficiary is to receive a sum certain each year in the amount of $25,000 and whatever additional amount is produced by the trust, that is, the entire income produced by the trust. But we fail to see that the provision for the payment of at least a certain amount changes the principle to be applied and authorizes the trustees to set aside a fund to replace wasting assets and turn them over to the remaindermen; their duty was to set aside property which would produce at least a certain amount of income, pay the income therefrom to the life beneficiaries and, when the property has served the purpose for which it was set aside, release it for the benefit of the remaindermen. The petitioners call our attention to the rule laid down in *In re Golding*, 127 N. Y. Misc. Rep. 821; 216 N. Y. S. 593, to the effect that " where trustees or executors find a portion of the estate invested in what are termed ' wasting ' securities, they should pay to the life beneficiary only so much of the income as represents a fair return upon the capital value, accumulating and retaining the residue for the benefit of the remaindermen, unless a contrary intention is evidenced from the will itself, read in the light of surrounding circumstances," but it is likewise true that a trustee is not permitted to retain an allowance for depreciation of wasting assets where the declaration of trust merely directs that the trustee pay over to the life beneficiary the income from such property. *N. Y. Life Insurance & Trust Co.* v. *Sands*, 53 N. Y. S. 320; and *Re Cornells Estate*, 44 N. Y. S. 585. See also *In re Chapman*, 66 N. Y. S. 235, and *Stevens* v. *Metcher*, 152 N. Y. 551. We think the intention here shown was that the remaindermen should receive only that which was left after it had been used for the benefit of the life beneficiary, and under such circumstances, even if the leaseholds were entirely exhausted, the remaindermen have no

right to complain because the testator saw fit to leave his property in such a way that they only have the possible chance of taking what might be left after their use by the life beneficiary. Perry on Trusts and Trustees, vol. 2, p. 895. The trustees in this instance were, of course, charged with the duty of maintaining an amount of property sufficient to produce $25,000 for each of the petitioners, but there was no provision in the will which required them to make the leaseholds a part of the trusts for the benefit of the daughters, nor, if they did make such assets a part of such trusts, that the value of such property should be kept unimpaired. What the trustees did was to retain a part of the income produced by the trusts in order that the trust property might remain unimpaired, thus seeking to create corpus from income. Since we find no authorization for such action under the will, we are of the opinion that the action of the Commissioner in adding such amount to the income of the petitioners should be sustained.

Nor do we think it material that the accounts of the trustees, showing the amounts in question retained as amortization of leaseholds, were approved by the Surrogate's Court, since it does not appear that an issue was raised as to the correctness of the trustees' action. The parties who might have complained were the petitioners and, as the petitioners suggest, they may have acquiesced in such procedure, but we do not think that acquiescence on their part can render nontaxable to them income which they were entitled to receive.

*Judgment will be entered for the respondent.*