(118 App. Div. 404)

### NICHOLS et al. v. RILEY et al.

(Supreme Court, Appellate Division, Third Department. March 13, 1907.)

1. APPEAL—RESERVATION OF OBJECTIONS—MOTION IN TRIAL COURT—PLEADINGS.

    Where defendant fails to ask that the complaint be made more definite and certain, he cannot on appeal complain that no cause of action is stated, if under the pleadings as they stand, any contract can be proven which is fairly within the general allegations made.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 2, Appeal and Error, §§ 1226–1240.]

2. SAME—DEMURRER TO ANSWER—QUESTIONS REVIEWABLE.

    On a demurrer to an answer the question whether or not the complaint states facts sufficient to constitute a cause of action must be reviewed as though the decision were made on demurrer to the complaint, and for this purpose none of the facts stated in the answer will be assumed as true.

3. ATTORNEY AND CLIENT—PURCHASE OF CLIENT'S PROPERTY BY ATTORNEY—VALIDITY.

    Where an attorney represented to his clients that in order to protect their interests it was necessary for him to purchase at a sale thereof cer-

tain life insurance policies belonging to them which they had deposited as collateral security, and agreed to purchase the policies but failed to do so, a subsequent purchase by him inured to the benefit of the clients to the amount of the surplus of the value of the policies over the amount paid by the attorney.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 5, Attorney and Client, §§ 250–263.]

4. COUNTERCLAIM—SUFFICIENCY.

In an action by clients against their attorney to recover the surplus value over the amount paid by defendant at a sale thereof of life insurance policies owned by plaintiffs and sold by their creditor with whom they had deposited the policies as collateral security, a counterclaim alleging that at the time of the purchase of the policies and as part of the same transaction, defendant purchased of the creditor two deficiency judgments held by the creditor, one against each of plaintiffs, stated facts sufficient to constitute a cause of action.

5. SAME.

Code Civ. Proc. § 501, requires that a counterclaim tend in some way to diminish or defeat plaintiff's recovery. Plaintiffs alleged that defendant as their attorney represented to them that in order to protect their interests it was necessary for him to purchase at a sale thereof certain life insurance policies belonging to them which they had deposited as collateral security with a creditor, and agreed to purchase them but failed to do so, and claimed that a subsequent purchase by him from the purchaser at the sale inured to plaintiffs' benefit to the extent of the surplus of the value of the policies over the amount paid by defendant. Held, that an answer admitting the purchase, and alleging that at the time and as part of the transaction defendant also purchased two 'deficiency judgments held by the creditor, one against each of plaintiffs, the amount whereof defendant sought to counterclaim against plaintiffs severally, did not set up a counterclaim of the character specified in the section.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Set-Off and Counterclaim, § 38.]

Appeal form Trial Term, Clinton County.

Action by William W. Nichols and another against John B. Riley and another. From an interlocutory judgment in favor of defendant Riley, plaintiffs appeal. Reversed.

See 98 N. Y. Supp. 346, 112 App. Div. 102.

These plaintiffs, prior to December 10, 1903, were the owners of four policies of life insurance issued by the Mutual Life Insurance Company of New York upon the life of William W. Nichols, their father, aggregating $12,-500. They were also the owners of another policy of life insurance issued by the Union Mutual Life Insurance Company of Maine upon the life of their father for the sum of $5,000. These policies were held by the St. Paul Trust Company, a corporation carrying on business in St. Paul, Minn. The St. Paul Trust Company had been prior to this time the guardian of these plaintiffs, and these policies were held as security for the moneys which they had advanced to the plaintiffs as guardian. Upon the 10th day of December, 1903, these policies were sold by the said St. Paul Trust Company at a public sale, upon which sale they were purchased by the trust company itself. Thereafter the trust company went into the hands of a receiver, and upon the 20th day of April, 1905, the said receiver sold the aforesaid policies to the defendant John B. Riley, of Plattsburgh. William W. Nichols, the father, died on the 29th day of July, 1905. The insurance companies stand ready to pay over the money due upon the policies. The defendant Turner claims the moneys as assignee from John B. Riley. The plaintiffs have brought this action asking for a decree of the court that John B. Riley and the defendant Turner hold these policies as their trustee, and ask to be allowed to be subrogated to whatever rights they have therein upon payment of the sum that John B.

Riley paid therefor. The complaint alleges that John B. Riley had, prior to this December 10th, been the counsel and legal adviser of the father of the plaintiffs, and that prior to that time, "and since then, has acted and represented them (plaintiffs) as their attorney and counselor at law in various legal proceedings and actions, and given them advice as such, and had otherwise acted as their agent and representative in various business transactions." It is further alleged that by reason of this relationship John B. Riley became possessed of knowledge of all the facts in reference to these policies and the sum for which they were held as security; that prior to this 10th day of December these plaintiffs had negotiations with certain persons in Chicago for the sale of their interests in the said policies, and that various offers had been made to them by the said persons for the purchase of their interests, "whereby certain great advantages would have inured to these plaintiffs"; that prior to the 10th day of December, 1903, the defendant Riley had represented to William W. Nichols, one of these plaintiffs, that he would purchase said policies, and that when purchased the interest of the plaintiffs would be protected by said Riley, "and stated in effect that these plaintiffs would realize nothing or receive nothing from said policies unless said policies were purchased by said Riley, and that said Riley would look out for and protect the interests of these plaintiffs in the said policies, and that said purchase would be for and on account of these plaintiffs and to their benefit and advantage, and requested the plaintiffs herein to execute and deliver to him assignments of their interests in and to said policies, stating that he could not effect such purchase of said policies unless he had such assignments"; that, for the purpose stated, the plaintiffs did deliver to said Riley assignments of their interests in said policies, which assignments the said Riley has ever since retained, and which assignments he now has." It is further alleged that in reliance upon the representations and statements of said Riley the plaintiffs neglected to take any steps to obtain purchasers for said policies; that the said Riley did not bid or purchase the said policies upon the sale upon December 10th, but that secretly, upon the 20th day of April, 1905, he purchased the policies of the receiver of the said trust company, and that he thereafter assigned them to defendant Turner, who took with full knowledge of the plaintiffs' rights, and that due tender had been made both to said Riley and said Turner of the amount paid by Riley upon the purchase of said policies, and the request for their assignment, which had been refused.

The complaint purports to set forth a second cause of action, which states substantially the facts above stated, without the allegations as to the confidential relationship between the defendant Riley and the plaintiffs, but alleges that the promises made by said Riley to purchase said policies was fraudulently made without an intent to purchase the same. The prayer for relief is substantially for an equitable judgment declaring that these policies are held by said Turner in trust for plaintiffs, and that the plaintiffs are entitled to the proceeds thereof after payment of the amount paid by said Riley therefor. The answer of Riley, after making various denials and admissions, purports to set up two counterclaims. He in the first place denies that he had agreed to purchase the policies, as alleged in the complaint, or that he was owing any duty whatever to the plaintiffs to make the purchases for them. He admits that he purchased the policies upon the 20th day of April, 1905, of the receiver of the St. Paul Trust Company, and further alleges that at that time and as a part of said transaction he purchased two deficiency judgments held by the St. Paul Trust Company, one against each one of these plaintiffs. These judgments in each case amounted to upwards of $5,000. These judgments he seeks to counterclaim against the plaintiffs severally. To these two counterclaims the plaintiffs demurred upon the ground that they did not state facts sufficient to constitute a cause of action, and that they are not of the character specified in section 501 of the Code of Civil Procedure. The court at Special Term did not pass upon the demurrer to the defendant's counterclaims, but upon defendant's attack held that the complaint did not state facts sufficient to constitute a cause of action. The demurrers to the counterclaims were therefore overruled and the complaint was dismissed, with leave to amend upon payment of costs. From the interlocutory judgment entered upon this decision the plaintiffs have appealed to this court.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Wallach & Cook (Charles K. Allen and Garrard Glenn, of counsel), for appellants.

Weeds, Conway & Cotter (Frank E. Smith and Thomas F. Conway, of counsel), for respondents.

SMITH, P. J.   The defendant might well have asked for a more specific statement of the alleged agreement on the part of Riley, the attorney, as to who should advance the money, as to how much he should advance, and as to the conditions upon which such purchase was to be made.   Having failed to ask that the complaint be made more definite and certain, he cannot now complain that no cause of action is stated, if, under the pleadings as they stand, any contract or any agreement could be proven which is fairly within the general allegations made.

While this is a demurrer to the answer, because that demurrer searches the record, the defendant has procured a holding that the complaint does not state facts sufficient to constitute a cause of action. In reviewing this question, however, we are to review it as though the decision were made upon demurrer to the complaint, and for this purpose cannot assume as true any of the facts stated in the defendant's answer.   It may fairly be inferred that Riley's assurance to the plaintiffs that he would purchase these policies and hold them for their benefit referred to the sale upon December 10, 1903.   He had advised the plaintiffs that that was the only way in which they could obtain substantial benefit from the policies, and had assumed to undertake to perform this office for them.   In violation of his assurance he allowed their title to become divested by the sale, and afterwards, by secret agreement, purchased the property himself.   Upon proof of these facts we are of the opinion that equity should impress a trust upon the policies in the hands of Riley, or his assignees with knowledge, as to the surplus of the fund over and above the amount paid therefor.

The defendant's contention is that after the sale of December 10, 1905, the plaintiffs' title was completely divested, that Riley's relation of trust or agency terminated, and Riley might thereafter deal with the property the same as though he had been a stranger.   In my judgment it is not very material whether the agreement of Riley related to a purchase at the sale upon December 10th, or whether it was an assurrance of a purchase at any time that they could be obtained.   In either case I think that the subsequent purchase of Riley inured to the benefit of the plaintiffs.   In Downard v. Hadley, 116 Ind. 131, 18 N. E. 457, the headnote in part reads:

"An attorney, who is employed to perfect or defend a particular title to land, cannot, either during the continuance of the employment or after its termination, without disclosing the facts to and obtaining the consent of his client, avail himself of information acquired, or which it was his duty to acquire, while in that relation, and purchase an outstanding title for himself, and set it up in hostility to that which he was employed to perfect or defend; on the contrary, a title so acquired inures to the benefit of the client or his vendee."

In the opinion of the court it is said:

"The obligation of fidelity which the attorney owes to his client is a continuing one, so far as respects any matter which has once been professionally committed to the attorney's confidence; and, when the matter involved is the title to land, good faith and public policy require that any existing adverse title which the latter may thereafter purchase shall be deemed to enure to the benefit of his client, or his, the client's, vendee."

The case at bar is not the case of property dealt with by a trustee after the title had been lost to the cestui qui trust without fault of the trustee. Under the allegations of the complaint the divestment of title by the sale of December 10th was through the neglect or refusal of Riley to purchase said policies for the plaintiffs' benefit, as he had agreed to do. If upon the day after the sale Riley had purchased this property from the trust company, which itself became the purchaser upon the sale, it would hardly be questioned that he would hold such title for the benefit of the plaintiffs. Having failed to perform his agreement upon December 10, 1903, he may be deemed to be owing a continuous duty to purchase those policies for the benefit of the plaintiffs in fulfillment of the assurance which he had given them. And when, a year and four months thereafter, he procured those policies, equity should declare that the purchase was made in pursuance of that duty which he owed to them which had for so long remained unfulfilled.

I am not at all sure that to reach this conclusion it is necessary to find a breach of duty on the part of the defendant Riley in failing to purchase at this sale on December 10th. Assuming for the argument that there were conditions to such purchase by reason of which he was absolved from making the purchase, could he, without his client's consent, have made a private purchase next day and obtained title to himself? The fidelity which an attorney owes to his client is to use every endeavor in his power to the advantage of his client. By failing to insist upon conditions, even without collusion, opportunity may be presented for a subsequent purchase by him to his private gain. Collusion itself is difficult to prove. It may well be held that to insure the utmost fidelity of an attorney he should be barred from ever after, without his client's consent, making private gain out of a sale which he was once employed to prevent. This rule may well be dictated by public policy, and is in accord with the jealous care the courts have taken to guard sacredly the relations of attorney and client. In Ex parte James, 8 Ves. 337, 352, application was made to restrain the solicitor of an assignee in bankruptcy from bidding at a bankrupt sale. The motion was granted. Lord Eldon, in writing in respect thereof, said:

"With respect to the question now put, whether I will permit Jones to give up the office of solicitor and to bid, I cannot give that permission. If the principle is right, that the solicitor cannot buy, it would lead to all the mischief of acting up to the point of the sale, getting all the information that may be useful to him, then discharging himself from the character of solicitor and buying the property. Infinite mischief would be the consequence in a number of cases. On the other hand, I do not deny that those interested in the question may give the permission. The rule is that a trustee shall not become the purchaser until he enters into a fair contract, that he may become the purchaser with those interested. * * * No court can say, ab ante, they will permit this."

In Carter v. Palmer, 8 Clark & F. 657, a barrister had for several years been the general counsel of the plaintiff under a general retainer, and had by reason of that relation acquired an intimate knowledge of his affairs. After the relations were ended he purchased some securities which were held by the plaintiff. The House of Lords held the barrister to be trustee for the plaintiff of the securities thus purchased. Lord Cottenham, in writing for the court, said:

"From the earliest times down to the latest case in which I believe the subject has been discussed, which is Taylor v. Salmon (4 Myl. and C. 139), the rule in equity has been always recognized which would prevent a person in the situation of the appellant making such a purchase for his own benefit whilst he continued to act as agent. As the reason for this disability continues to operate after the employment has ceased, the disability itself must continue unless a contrary rule has been established by decisions. But this is not the case, but the very reverse."

See, also, Peck v. Peck, 110 N. Y. 64, 72, 17 N. E. 383; Case v. Carroll, 35 N. Y. 385.

If, then, the complaint is held to state a good cause of action, we must decide what the Special Term has failed to decide, to wit, the issue raised by the plaintiffs' demurrer to the defendant's counterclaims. To these the plaintiff has demurred on the ground that they do not state facts sufficient to constitute a cause of action, and also upon the ground that they are not of the character specified in section 501 of the Code. It cannot be held that they do not state facts sufficient to constitute a cause of action. By section 501 of the Code, however, a counterclaim must tend in some way to diminish or defeat the plaintiff's recovery. I am unable to see how these counterclaims in any way can tend to diminish or defeat the plaintiffs' recovery in this action. I cannot agree with the appellant's counsel that the complaint states a legal cause of action for deceit. It was evidently not the intention of the pleader when the complaint was drawn, nor can such a cause of action be spelled therefrom. There are no appropriate allegations as to damage suffered in order to sustain such a cause of action. If this plaintiff succeeds in holding the defendant Riley as trustee of these policies, it is clear that the defendant would have no right of action upon these deficiency judgments. They would be deemed to be held in like trust with the policies. If they do not succeed in establishing this trust, they must fail in their action, and the establishing of these counterclaims by the defendants will neither defeat nor diminish any judgment which they might obtain. If we are right in this view of the pleadings, it is unnecessary to determine whether the claims of the plaintiffs are so far several as to admit of several counterclaims.

The interlocutory judgment should, therefore, be reversed, and the plaintiffs' demurrer sustained, with leave to the defendant to amend his answer upon payment of costs of the demurrer and of this appeal. All concur.