### Petition of SCHILL.

United States District Court
S. D. New York.
Jan. 17, 1949.

Oswald I. Kramer, New York City, United States Immigration Examiner.

Clarence W. Archibold, New York City, for petitioner.

HULBERT, District Judge.

Petitioner, a native and national of Germany, filed his petition for naturalization on November 28, 1940. The question presented for determination is whether petitioner has established his attachment to the principles of the Constitution and a favorable disposition to the good order and happiness of the United States for the period required by law.

Petitioner lawfully entered the United States on January 13, 1904, and has been absent from this country on 35 occasions from that date until 1939. These absences were occasioned by annual trips to Germany and other European countries, none of which lasted as long as a year.

A summary of the more important facts from the rather voluminous record in this case is necessary to an understanding of the Government's opposition to this petition, and to the Court's disposition.

Petitioner married in 1915 in New York City, and was divorced by his wife in 1939. His wife was naturalized on May 17, 1923 in New York.

Petitioner was associated with the Krupp-Nirosta Corp., incorporated in the State of Delaware (later renamed Nirosta Corp.), first as a member of the board of directors in 1930; as secretary in 1931; as treasurer in 1932; and as president in 1935 which office he held until 1942, when the corporation was taken over by the Alien Property Custodian. The Krupp firm of Germany owned approximately 51% of the stock of Krupp-Nirosta, the remainder being held mainly by American steel companies.

Krupp-Nirosta was formed in about 1928 for the purpose of holding and licensing the use of stainless steel patents which were owned by the Fried. Krupp A. G., and others. The record indicates that sometime in 1937 the German Krupp Company transferred its interest in Krupp-Nirosta to a Dutch bank, which later transferred it to a Swiss corporation. These

---

transactions, however, appear to have been merely *pro forma*, so that the Krupps' of Germany retained majority control of Krupp-Nirosta.

On December 7, 1939, petitioner wrote a letter to an official of the German Krupp corporation in which he stated in part that American industry was making every effort to obtain overseas markets, particularly in South America, which markets were no longer available to German industry by reason of the war. He informed the German Krupp corporation that it would be in its interest to inform its customers that they might direct their inquiries to Krupp-Nirosta or to the petitioner personally. He stated that the German company would participate on a commission basis in such transactions, and that by this method the German company would keep its foreign contacts for future use after the war. The German company, however, never accepted this proposal.

In 1942, petitioner's residence and place of business were searched by federal authorities, and he was taken into custody. In his home were found books and pamphlets by prominent Nazis, including Rudolph Hess, Herrman Goering, and Adolph Hitler, most of which were available on the open market in this country.

The Government also presented several letters, written by petitioner either personally or in his official capacity as an officer of Krupp-Nirosta which it contends, indicate that petitioner felt favorably towards the German war effort. The Court feels that this contention is met by petitioner's explanations.

After his apprehension in 1942, petitioner was given a hearing before Enemy Alien Hearing Board on November 11, 1942 which recommended that petitioner should be paroled because he was not thought to be "potentially dangerous". Nevertheless, in January 1943, the Attorney General ordered the petitioner interned.

Subsequently the petitioner was transferred from Ellis Island to Fort Lincoln, N. D., and a rehearing was had there before another Board on which the Government was represented by a Special Assistant Attorney General. This Board likewise recommended the release of the petitioner, and this finding was concurred in by the Government representative. However, the report was again not acceptable to the Attorney General, and petitioner's confinement was continued.

Petitioner was again transferred to Ellis Island so that he might appear as a witness before a Federal Grand Jury at Trenton, New Jersey, in connection with a prosecution of certain steel companies some of whom had a minority interest in the Krupp-Nirosta.

In August, 1945 a third hearing was held before a Repatriation Board, consisting of three members of the staff of the Attorney General directly connected with the operation of the Enemy Alien Bureau. This board recommended the petitioner for repatriation "on the ground that Schill was a significant instrument of German economic warfare".

Petitioner was temporarily paroled for hospitalization in December 1945, and was ordered removed from the United States in January 1946. This order, however, was not served upon him until June 1946, because of his illness. In July 1946, petitioner was unconditionally released pursuant to an order of the Attorney General, dated July 18, 1946. This order read in part as follows:

"The above named alien enemy having been ordered removed by order dated January 16, 1946: And it appearing from a reconsideration of all the evidence bearing upon this matter that said alien enemy should be released, Now, therefore, it is

"Ordered that said order dated January 16, 1946, be and the same hereby is vacated and set aside; and it is further

"Ordered that said alien enemy be released."

Throughout the proceedings in this matter, the court has been impressed with the frankness with which the petitioner has revealed information, which largely forms the basis of the Government's recommendation that his petition be denied. Furthermore, it was mainly on the basis of the information that petitioner gave to the grand jury, above referred to, that the grand jury indicted 24 defendants, who

subsequently pleaded *nolo contendere* and paid the maximum fines. In August 1948, the Antitrust Division again sought the petitioner as a possible witness in a civil suit to restrain 18 of said defendants from continuing the illegal practices.

The main point in the Government's opposition to the petition is the letter which petitioner wrote on December 7, 1939 to the German Krupp corporation. This letter, it is asserted, shows that petitioner offered to assist the "business efforts of the German steel industry at a time when Germany was engaged in a war of conquest, aggression and domination."

The Supreme Court has said in U. S. v. Manzi, 1928, 276 U.S. 463, 48 S.Ct. 328, 329, 72 L.Ed. 654, that "citizenship is a high privilege, and when doubts exist concerning a grant of it, generally at least, they should be resolved in favor of the United States and against the claimant". Based on this principle, the Government urges that a doubt exists as to the petitioner's attachment to the principles of the Constitution, and disposition to the good order and happiness of the United States "particularly by reason of his sympathy for, approval of, and connection with the policies and program of Nazi Germany."

The Court of Appeals for this Circuit, speaking through Chief Judge L. Hand, indicated what is required by the phrase "attachment to the principles of the Constitution", in U. S. v. Rossler, 2 Cir., 1944, 144 F.2d 463, when it said: "That attachment to the principles of the Constitution which the law exacts at naturalization is not addressed to the heart, it demands no affection for, or even approval of, a democratic system of government, but merely an acceptance of the fundamental political habits and attitudes which here prevail, and a willingness to obey the laws which may result from them. Naturalization expresses the alien's voluntary initiation into the new society of his choice, and his change of allegiance may be dictated by any purpose, however personal or selfish, so be it it is not inconsistent with a willingness to throw in his lot with that society and make its fate his own. Patriotism is not a condition of naturalization, any more than it is of continued native citizenship."

It must be remembered that at the time the petitioner wrote the letter to the Krupp firm in Germany, this country was not yet at war. World War II had just started with the German invasion of Poland on September 1, 1939, and the declaration of war on Germany by Britain and France on September 3, 1939. This country, at that time, was officially a neutral in that conflict, no matter with whom our sympathies may have been.

Considering the letters of petitioner to the Krupps in the light of the surrounding circumstances and the fact that it was written in petitioner's official capacity with Krupp-Nirosta, the Court does not conclude that it demonstrates petitioner's non-attachment to the principles of the Constitution. A case somewhat in point is that of the Petition of Westfried, S.D.N.Y., opinion by Chief Judge Knox of June 3, 1946, and of May 17, 1948, 90 F.Supp. 8. The activities of Westfried appear to have been inimical to the interests of the United States to a far greater degree than those of the petitioner can be construed to be. Yet, after having once denied his petition, Judge Knox later granted it. Although the latter decision in the Westfried case, supra, was on a second petition for citizenship, it has been held in many cases that the court is not restricted to the five year period mentioned in the statute in determining whether the petitioner is a person of good moral character and attached to the principles of the Constitution. Petition of Boric, D.C.Ore.1945, 61 F.Supp. 133; Petition of Gabin, D.C.Cal.1945, 60 F. Supp. 750, and cases cited; Petition of Ludecke, D.C.Mich., 1940, 31 F.Supp. 521.

On the basis of all the evidence presented, the appearance of the petitioner and the manner in which he testified, the Court has no doubt of his attachment to the principles of the Constitution and his favorable disposition to the good order and happiness of the United States for the statutory period.

The petition is granted.

Submit order.