## SCHILL v. McGRATH.

United States District Court
S. D. New York.

Feb. 20, 1950.

340

Baldwin, Todd & Lefferts, New York City, Hiram C. Todd, James K. Campbell, New York City, of counsel, for plaintiff.

Irving H. Saypol, United States Attorney, New York City, Daniel G. McGrath, Chief Trial Attorney, Leon Yudkin, Attorney, Office of Alien Property, Department of Justice, Washington, D. C., for defendant.

IRVING R. KAUFMAN, District Judge.

This is an action brought under Section 9 of the Trading With the Enemy Act, 50 U.S.C.A.Appendix, § 1 et seq., to recover property vested by the Alien Property Custodian during World War II. Both parties have moved for summary judgment.

Plaintiff was associated from 1930 to 1942 in ascending degrees of importance with the Nirosta Corporation, a Delaware corporation originally known as Krupp-Nirosta Corp., organized in 1928 for the purpose of holding and licensing the use of stainless steel patents which were owned by the Fried. Krupp, A. G. of Essen, Germany. Plaintiff became President of the Nirosta Corporation in 1935 and held that office until 1942, when the corporation was taken over by the Alien Property Custodian. The Krupp firm owned a majority of the stock of the corporation, and the balance of the stock was divided among certain American steel companies. The Krupp shares were transferred (in form only) to Wolframerz, A. G., a Swiss corporation, in 1937.

On June 16, 1942, the Alien Property Custodian by Vesting Order No. 22, 7 F.R. 4628, vested in himself 715 shares of Nirosta stock, 100 shares of which were registered in plaintiff's name and the rest in the name of Wolframerz, A. G.

In Vesting Order No. 1240, 8 F.R. 5775, executed on April 15, 1943, the Custodian found that plaintiff Emil Schill was "a German citizen presently interned in a United States alien internment camp"; that the 615 shares of the Nirosta Corp., previously vested by Vesting Order No. 22, were beneficially owned by Fried. Krupp, A. G. of Germany; that plaintiff's claims against Nirosta including any claims for dividends on 70 of the 615 shares were property of a national of a designated enemy country; that "to the extent that such nationals are persons not within a designated enemy country, the national interest of the United States requires that such persons be treated as nationals of the aforesaid designated enemy country (Germany)"; and vested plaintiff's claims and interest.

Plaintiff entered the United States in 1904, and, except for occasional trips abroad, has resided here since that time. He was apprehended on October 5, 1942, pursuant to a Presidential warrant and interned as a dangerous enemy alien until he was temporarily paroled for hospitalization in December, 1945. On January 16, 1946 he was ordered removed to Germany by the Attorney General, but the order was vacated in July, 1946, and the plaintiff was unconditionally released on July 23, 1946. Plaintiff was naturalized as a United States citizen on January 24, 1949, pursuant to an opinion by Judge Hulbert, dated January 17, 1949, Petition of Schill, D.C., 90 F.Supp. 246. Until his naturalization, plaintiff was a citizen and national of Germany.

On October 2, 1942 plaintiff filed a claim for the return of his stock and dividend rights with the Alien Property Custodian. No determination was made on this claim and on September 6, 1946 plaintiff filed renewed claims but they were denied by an order dated November 10, 1947. After being admitted to citizenship plaintiff applied to the Attorney General on March 4, 1949 to have vacated the order of November 10, 1947, but this application was denied on August 5, 1949. Thereafter on October 14, 1949 the present action was commenced.

 It is clear that plaintiff's motion for summary judgment could in no event be granted, for defendant has put in issue, among other things, plaintiff's right, title and interest in the property which he seeks to recover. However, defendant's motion for summary judgment should first be considered, since plaintiff's counsel admits that the action cannot survive as a matter of law if Section 39 of the Trading With the Enemy Act (one of the grounds upon which defendant's motion is based) is entitled to the construction for which defendant contends.

Section 39, enacted as Section 12 of the War Claims Act of 1948, provides that: "No property or interest therein of Germany, Japan, or any national of either such country vested in or transferred to any officer or agency of the Government at any time after December 17, 1941, pursuant to the provisions of this Act, shall be returned to former owners thereof or their successors in interest, and the United States shall not pay compensation for any such property or interest therein. * * * Nothing in this section shall be construed to repeal or otherwise affect the operation of the provisions of section 32 of this Act * * *."

This Section clearly states that if the property or interest vested by the Alien Property Custodian belonged to a national of Germany or Japan at the time it was vested, it may not be returned, and suit for the return of such property or interest cannot be brought pursuant to Section 9 of the Act.

Plaintiff was a citizen of Germany at the time the property in question was validly vested, and as such he was a "national" of Germany as that term is used in the Act. Bellman v. Clark, D.C., Civ. No. 47-229, S. D.N.Y., November 8, 1948;[1] Miyuki Okiahara v. Clark, D.C.Hawaii 1947, 71 F.Supp. 319; see H.R. 976, 80th Cong., 1st Sess., pp. 2–3; Executive Order 8389, Section 5-E(i), 5 F.R. 1400 (1940), as amended by Executive Order 8785, 6 F.R. 2897 (1941), 12 U.S.C.A. § 95a note.

These facts are admitted by the plaintiff and the only matter in dispute on defendant's motion is the interpretation of Section 39; therefore this is a proper case for consideration upon a motion for summary judgment. See Colby v. Klune, 2 Cir., 178 F.2d 872.

There have been no cases construing Section 39, and if the Section could in any way be considered ambiguous, the only aid to construction would be the legislative history of the Section. Since different interpretations of the Section have been advanced by the plaintiff and the defendant, respectively, an examination of the Congressional background of the bill by which the Section was enacted should resolve the issue.

In the hearings on the bill held before a Senate Judiciary subcommittee, numerous witnesses objected to the bill on the ground that it did not distinguish between loyal and disloyal enemy aliens, but instead precluded all from recovering vested property by judicial proceedings. See Hearings before a Subcommittee of the Committee on the Judiciary, U. S. Senate, 80th Cong., 2d Sess., on H.R. 4044, pp. 197–198, 233–236, 254–255 (hereafter designated as "Hearings"). One witness suggested that if confiscation of alien property is to take place, "proper provision for the return of the property to that class of aliens as we designate as friendly ones should be made." (p. 255). Another witness proposed an amendment which would have limited Section 39 so that it would not apply to German or Japanese nationals residing outside of enemy-occupied territory unless they aided or abetted enemies of the United States (p. 235). None of these alternative proposals was adopted.

The bill had previously been unanimously reported by the House Committee on Interstate and Foreign Commerce, H.R. 976, 80th Cong., 1st Sess. (1947). Section 39 was given serious consideration by the House of Representatives in a discussion on the floor on January 26, 1948 (94 Cong. Rec. I, pp. 550–573), and it was recognized that many perfectly innocent people would,

1. No opinion for publication.

under the bill, lose their all (p. 551), and that recourse could only be had to Section 32 of the Trading With the Enemy Act for the return of property taken from friendly aliens living in the United States (p. 552).

It is therefore clear that Section 39 was intended to apply to *all* German or Japanese nationals living in the United States, and counsel for the plaintiff does not disagree with this conclusion. Counsel does urge, however, that Section 39 was not intended to foreclose those who are now American citizens but were not such at the time the property vested, and that plaintiff is in this category since he was naturalized in January, 1949. This contention is based on several statements, made in the course of the hearings and debate on the bill, to the effect that Section 39 is designed to preclude the return of German enemy assets to German ownership and control. See H.R. 976, supra, p. 2; Hearings, supra, p. 111; 94 Cong.Rec. I, supra, p. 551.

Though this may be one of the bases of Section 39, there is nothing in the legislative history to indicate that Section 39 was not intended to bar return of property to former German owners who subsequently obtained American citizenship. Section 39 is directed at property rather than claimants, and it is the status of the property when vested rather than the status of the claimant at the time of suit which is controlling.

If Congress had intended the bar to be applicable only to present nationals of Japan or Germany, it could have used appropriate language to obtain that result. However, the clear language used in Section 39 makes no exception in the case of one now a citizen of the United States. Since the Section is applicable to friendly aliens, there is no logical reason why it should not be applicable to those who have had the good fortune to become United States citizens.

█ No suit under Section 9 may be instituted after April 30, 1949, or after the expiration of two years from the date of vesting, whichever is later, but in computing such two years there shall be excluded any period during which there was pending a suit or claim for return pursuant to Section 9 or 32(a). Section 33. Even if plaintiff were correct in his interpretation of Section 39, there would still be a serious question in this case as to whether plaintiff is barred by Section 33. However, we will assume for the purpose of his argument as to the interpretation of Section 39 that he is not so barred. The plaintiff urges that those German nationals who do become naturalized have a right to bring suit under Section 9 for the return of their property. Yet the time limitation applies, and only those who fortuitously become naturalized before the expiration of the permissible period stated in Section 33 could institute an action during that period. If plaintiff's contention is correct, the right to bring suit would be dependent on the speed of the Naturalization Service, and in all likelihood only those who filed their naturalization petitions before the war, as did plaintiff, would be eligible to bring suit. Furthermore Section 39 applies to nationals of Japan as well as Germany, and it is common knowledge that persons of the Japanese race are ineligible for United States citizenship. 8 U.S.C.A. § 703; Morrison v. People of State of California, 1934, 291 U.S. 82, 54 S.Ct. 281, 78 L.Ed. 664. Therefore the implied amendment which plaintiff desires this Court to read into Section 39 would be as follows: "Provided, however, that this section shall not apply to German nationals who are naturalized as United States citizens within the period in which suit can be brought under section 9 of this Act, as designated in section 33 hereof."

Surely such a provision cannot be implied where it does not exist. The Section as enacted has clarity and force and does not contain any modifications or exceptions.

It should be noted that Congress was not unaware of the problem of the rights of citizens of the United States, and that in the debate on Section 39 a member of the House Committee on Interstate and Foreign Commerce mentioned that the Committee was considering a bill (H.R. 4903) which would broaden the scope of those

eligible to get their property back under the Trading With the Enemy Act by amending Section 32 so that "citizen of the United States" would in effect include "an individual who at any time after December 7, 1941, and prior to the expiration of the time during which return may be properly made under this Act has been or is deemed to be a citizen of the United States." 94 Cong.Rec. I, supra, p. 553.

The policy behind the enactment of Section 39 as stated by the House Committee, H.R. 976, pp. 2-3, is as follows: "The policy of nonreturn and noncompensation is a sound public policy which should be enacted into law. It does not violate any concepts of international law or international morality. No essential difference exists between private property and public property in the case of Germany and Japan. For several years before World War II while Germany and Japan were preparing to make war upon the United States, property owned in the United States by the citizens of both of these countries was subject to rigid control of their respective governments. While the fiction of private ownership was retained, actually property of German and Japanese nationals in the United States was widely used to accomplish the national objectives of those countries."

It was thought that the enemy government had the duty to reimburse its nationals for loss due to its own action in waging war (94 Cong.Rec. I, supra, pp. 551, 556, 564; Hearings, supra, p. 22), and that it was morally proper for the United States Government to take the property of enemy nationals and apply it to the legitimate claims of American nationals. 94 Cong. Rec. I, supra, p. 564; Hearings, supra, p. 101. The view of the Justice Department on the bill was that the property, having vested, is the property of the United States and "that the *former owners* of such property have *no claim for its return.*" (Emphasis added.) 94 Cong.Rec. I, supra, p. 571.

Section 39 might be considered harsh, and innocent persons may suffer because of it. Indeed, it has even been suggested by one Representative that the bill could be characterized as "legalized robbery." 94 Cong.Rec. I, supra, p. 551. The Government, however, has the right under the war power clause of the Constitution, Art. 1, Sect. 8, Cl. 11, to confiscate property of a national of an enemy nation, and this right is not limited by the due process or just compensation clause. See Hearings, supra, pp. 19-20; Silesian-American Corp. v. Clark, 1947, 332 U.S. 469, 475, 68 S.Ct. 179, 92 L.Ed. 81; Cummings v. Deutsche Bank, 1937, 300 U.S. 115, 120, 57 S.Ct. 359, 81 L.Ed. 545; United States v. Chemical Foundation, 1926, 272 U.S. 1, 11, 47 S.Ct. 1, 71 L.Ed. 131; Miller v. United States, 1870, 78 U.S. 268, 11 Wall. 268, 20 L.Ed. 135. This Court cannot subscribe to the theory advanced by plaintiff that the clear and unambiguous language of Section 39 should be supplemented by judicial legislation.

This does not mean that friendly nationals of Germany or Japan are barred from all relief under the Trading With the Enemy Act. There still remains the authority of the Alien Property Custodian to grant administrative relief as provided by Section 32, which authority was specifically preserved in Section 39. See 94 Cong. Rec. I, supra, p. 552. However, the right of return under Section 32 is administrative and discretionary, and there is no right to review the judgment of the administrative authorities under this Section. McGrath v. Zander, D.C.Cir., 1949, 177 F. 2d 649.

Accordingly, suit to enforce the claim of plaintiff is barred by Section 39 of the Trading With the Enemy Act and defendant's motion for summary judgment is granted and the complaint dismissed. Plaintiff's motion for summary judgment is denied.