**BROWNELL, Atty. Gen.**
v.
**FIDELITY UNION TRUST CO.**
Civ. No. 974.

United States District Court,
D. New Jersey.
March 25, 1954.

William F. Tompkins, U. S. Atty., Newark, N. J., William E. McMahon, II, Atty., Office of Alien Property, Washington, D. C., for plaintiff.

Riker, Emery & Danzig, Dickinson R. Debevoise, Newark, N. J., for defendant.

HARTSHORNE, District Judge.

The Attorney General of the United States, as statutory successor to the Alien Property Custodian, brings this action, pursuant to the provisions of the Trading With the Enemy Act, as amended, 50 U.S.C.A.Appendix, § 17, for the possession of certain assets vested by his vesting order, and for a declaratory judgment as to his rights therein, 28 U. S.C.A., Judiciary, §§ 1345, 2201. The vesting order of July 14, 1947 recites that two named individuals and a named German charity, the Bodelschwingsche Anstalten, are German nationals, and vests their "right, title, interest and claim * * * arising out of a trust created by trust agreement dated May 6, 1926 between Newark Quarter Collection, Inc. and Fidelity Union Trust Company." The vesting order thus vests, not the specific trust corpus itself, on the apparent theory that same is not kept separate, so as to be identifiable, but vests the right, title and interest of the above German nationals therein, and asks for a declaration of the rights of plaintiff as Alien Property Custodian thereto.

· Normally, if specific property were involved, the Alien Property Custodian could have instituted a mere possessory action, if there were difficulty in obtaining possession of the vested property, and in this action, no question of the rights of other parties therein could be considered, save their status as German nationals (Trading With the Enemy Act, supra, § 7) all such rights being subject to adjudication subsequently under the further provisions of such act. Ibid. Sec. 9, 56 A.J., War, Secs. 87, 88. However, as seen above, the present is not such a mere possessory action, but one seeking a declaration of the rights of the Alien Property Custodian in the rights of such German nationals in the above trust, whatever they may be. Thus these title questions must be here considered. Propper v. Clark, 1948, 337 U.S. 472, 69 S.Ct. 1333, 93 L.Ed. 1480; Zittman v. McGrath, 1950, 341 U.S. 446, 463, 71 S.Ct. 832, 95 L.Ed. 1096.

Defendant Trust Company, the Trustee, alone is joined as defendant, as the real party in interest. Fed.Rules Civ. Proc. rule 17(a, b), 28 U.S.C.A., N.J. R.R. 4:30–1. Defendant now moves to dismiss the complaint for failure to join, not the beneficiaries, but the settlor of the trust, Newark Quarter Collection, Inc., though same is irrevocable, and the Attorney General of the State of New Jersey, as allegedly indispensable parties. Fed.Rules Civ.Proc. rule 12(b). This is apparently on the theory that this charitable trust has failed, and that consequently there is either a resulting trust for the benefit of the settlor, requiring the latter's joinder, or there should be an application of the cy pres doctrine, requiring the joinder of the State Attorney General.

There is no question under the proof submitted by agreement for consideration of this Court on this motion, that the two individuals named in the trust as life beneficiaries are German nationals, or that the above remainderman is a bona fide German charity. Of course, the fact that the remainder of the trust principal is to be paid over to the German charity "for its own use and benefit" does not prevent this remainder from being to a charitable use. In fact, it insures it, since the charity could obviously use its assets only for charitable purposes. Thus the question is, whether a charitable trust in remainder, created before World War II for the benefit of a German charity, is invalidated by World War II, and the provisions of the Trading With the Enemy Act enacted to meet the needs of this country in such war.

■ That Congress, in the exercise of its war power, U.S.Const. art. I, § 8, may seize and confiscate the property of alien enemies, is clear. Cummings v. Deutsche Bank, 1937, 300 U.S. 115, 57 S.Ct. 359, 81 L.Ed. 545. This right was well recognized at common law, for the dual purpose of weakening an enemy country, by preventing it from diverting the property of its nationals to the making of guns, and conversely to enable this country to prosecute the war more successfully with the aid of this property, or to meet the costs of the war to it or its nationals. Such was the constitutional purpose and effect of the Trading With the Enemy Act. All the property of enemy nationals, within the jurisdiction of this country, was thus seizable and usable accordingly.

However, the claim of defendant, implicit in the above motion, is that the above trust rights, at least the principal thereof, no longer belong to the German charity named in the trust, but that such trust has been nullified by the war, and the exercise of the above valid war powers. This contention rests upon a fundamental misconception.

■ The declaration of war against Germany was a declaration by this government against the government of Germany. It did not turn a German citizen individually into an outlaw. While this was the subject of considerable international publicity during the war, this was not mere propaganda, but for the following reasons was sound law. Subject to the needs of this country in the prosecution of the war for its use

of the property of a German citizen, as above, the rights of the German citizen to his property continue. This remains true whether those rights spring from his legal relations with Germans or with American citizens. True, those rights could not be specifically enforced and carried out during the war because of the interruption of communications. In addition, they could not be carried out if to do so would actually aid the enemy and hamper our government in its prosecution of the war. But subject to such possibilities, none of which apply here, save the rights of seizure of the Alien Property Custodian as above, the legal rights of the German citizen continue to exist despite the war. They are merely suspended from operation by the war. This principle is well settled at common law. Any other belongs to a barbarian code. As has been aptly stated by the United States Supreme Court in Sutherland v. Mayer, 1926, 271 U.S. 272, 287, 46 S.Ct. 538, 540, 70 L.Ed. 943:

> "Private rights and duties are affected by war only so far as they are incompatible with the rights of war. * * * Agencies, created before the war, and not requiring intercourse across the enemy's frontier, such as for the collection of debts, preservation of property, and so forth, are not terminated by war."

And in Vorhaus v. City National Securities Co., Sup.Ct.1917, 167 N.Y.S. 736, affirmed 182 App.Div. 922, 167 N.Y.S. 1118 the Court held that a trust was not invalidated but only suspended by the war. See also Sands v. New York Life, 10 Am.Rep. 535 (N.Y.), 2 Restatement Contracts, Sec. 596. Indeed, the Trading With the Enemy Act itself impliedly recognizes this principle. For it provides "After the end of the war any claim of any enemy or of an ally of enemy to any money or other property received and held by the alien property custodian or deposited in the United States Treasury, shall be settled as Congress shall direct * * *." Ibid. § 12. This means that any property vested by the Alien Property Custodian, and not used by him for the superior needs of this government, will be considered by Congress in the light of the legal claims thereto.

■ Such being the case, the trust in question continued valid despite the war, though suspended from physical performance during the war. It continued, subject to the superior power of this government to seize the rights of its beneficiaries under the war power and the Trading With the Enemy Act, since they are German nationals.

■ Therefore, since, subject to this sovereign power, the trust for these German nationals subsists, there can be no resulting trust to the settlor, and there is no need for the application of the doctrine of cy pres. Since this Court thus has before it the real party in interest, an adjudication may be made binding on the Trustee. Thus neither the Newark Quarter Collection, Inc. nor the State Attorney General are indispensable parties. Fed.Rules Civ.Proc. rule 19(b). United Lacquer Manufacturing Corp. v. Maas & Waldstein Co., D.C.N.J.1953, 111 F.Supp. 139. Indeed both the settlor and the trustee are estopped to object to the validation of the very terms of the trust which one has established and the other has accepted. As to the State Attorney General, there is not only no room for the application of the cy pres doctrine, but in addition the charitable part of the trust is not yet being administered, since it is a remainder subject to two existing life interests. Moreover, when administered, that will occur, not in New Jersey, but in Germany, outside the jurisdiction of the State Attorney General. Nor does the Trustee need the joinder of any such parties for its protection. Under the Trading With the Enemy Act, § 7(e), "No person shall be held liable in any court for or in respect to anything done or omitted in pursuance of any order, rule, or regulation made by the President under the authority of this Act", such as compliance by the Trustee with the above vesting

order. In addition, the same section of the act provides "Any payment, conveyance, transfer, assignment, or delivery of money or property made to the alien property custodian hereunder shall be a full acquittance and discharge for all purposes of the obligation of the person making the same to the extent of same." Ibid. § 7(e). See also section 5(b)(2).

Defendant's motion will be denied.