William R. Brennan, Jr., J.
This equity action involves waterfront property in the City of Glen Cove which is now known as Lot No. 58 in Section 21, Block A, on the Nassau County Tax Map. In the year 1949 this parcel was sold for unpaid taxes and legal title thereto is presently vested in the defendant Frank A. L. Uhlendorf. The action, denominated primarily as one for a declaratory judgment with requested incidental relief by way of partition and accounting, is based upon the theory of constructive trust. It is plaintiff’s contention that title is held by the defendant Frank A. Uhlendorf in trust for the successors in interest of certain tenants in common who owned the property before the tax sale. It is thus necessary that the state of the title immediately prior to the tax sale be determined.
In the year 1894 all of present Lot No. 58 was included in property then divided into three separate parcels. One parcel was then owned by Louis T. Duryea and the other two were owned by Louis T. Duryea and his brother Frank W. Duryea as tenants in common. Louis T. Duryea died intestate in 1924 and left surviving as heirs at law two daughters, Susan W. Leach and Frances D. Bliss. Susan Leach died in 1945 and her executor conveyed her interest in Lot 58 to the defendant Doris Uhlendorf. This conveyance vested in Doris Uhlendorf a one-half interest in the Louis T. Duryea parcel and a one-quarter interest in the Duryea brothers ’ parcels. As of 1949 the remaining one-half interest in the Louis T. Duryea parcel and a one-quarter interest in the Duryea brothers’ parcels were vested in Frances D. Bliss who was' then still alive.
Frank W. Duryea died intestate in 1922 and left him surviving his heir at law, a son, Wright Duryea. Prior to his death, Frank W. Duryea had established a trust, the res of which might be held to have included his interest in Lot 58. One John R. White received in 1947 a deed from Wright Duryea of his interests in Lot 58 and also a conveyance from the trustee under the Frank W. Duryea trust. Through these two conveyances the entire interests of Frank Duryea in the parcel *728 acquired by Mm and Ms brother Louis in 1894 had become vested in the said John R. White. There being no conveyance out of White through 1949, it follows that legal title to Lot 58 immediately prior to the 1949 tax sale was vested in Doris Uhlendorf, Frances D. Bliss and John R. White as tenants in common. Through evidence introduced during the trial, the court finds as a fact that one Frank A. Ludlam, the estate of whom is a party defendant here, and who was Doris Uhlendorf’s grandfather, was actually the beneficial owner of the interest which Doris Uhlendorf had in this property at that time. Consequently, the property immediately prior to the 1949 tax sale was beneficially owned by Frank A. Ludlam, Frances D. Bliss and John R. White as tenants in common, and Ludlam was the only cotenant in possession of the premises.
Ludlam defaulted in the payment of the second half of the 1949 taxes amounting to $92.35 and at a sale of the tax lien on December 1, 1949 his grandson, Frank A. Uhlendorf, was the purchaser. He subsequently assigned the interest to Knocklong Corporation, which, on January 9, 1952, received a deed for Lot 58 from the County Treasurer. Knocklong thereafter commenced an Administrative Code action which resulted in the usual judgment in March of 1952. Title stemming from the tax sale deed and bar claim action was thereafter vested in the defendant Frank A. Uhlendorf by a conveyance from Knocklong Corporation on August 7, 1952. Knocklong was merely a nominee in behalf of Uhlendorf in the foregoing transaction and Uhlendorf, in turn, an alter ego of his grandfather, Frank A. Ludlam.
The plaintiff concedes that the tax deed is good, that all of the procedures which resulted in the delivery of said deed were validly taken, that the subsequent action based upon the tax sale was regular, and that an innocent purchaser for value would have taken clear title. Plaintiff urges, however, that Ludlam could not extinguish the interests of Frances D. Bliss and John R. White, his tenants in common, by the device of defaulting in the payment of taxes while in sole possession of the premises and thereafter buying in the property through nominees at a tax sale.
At the outset, the defendants contend that the corporate plaintiff is not a proper party to maintain the action. In order to meet this objection, it is necessary to determine the corporate plaintiff’s interest, if any, in Lot 58. Long after the tax sale and bar claim action had been concluded the plaintiff began acquiring deeds from the successors in interest of Frances D. *729 Bliss and John B. White. Frances D. Bliss died on December 4, 1953 and left surviving as heir at law her only son, Robert Bliss, who, in turn, on November 3, 1958, conveyed his interest to the corporate plaintiff. Under his contract Robert Bliss was paid a certain sum in consideration for the deed and may also be entitled to a far more substantial sum contingent upon the successful outcome of this action. In December, 1951 John R. White conveyed his interests to Realty Associates, which thereafter conveyed to G-len Cove Realty Corp., which then conveyed to G-len Cove Realty Co. In 1956 Glen Cove Realty Co. conveyed its interest to Creek Development Corporation, which thereafter conveyed the same interest to one Ira A. Miller. On October 23,1958 Ira A. Miller conveyed his interests in Lot 58 to the plaintiff corporation. Thus, from documentary evidence of recorded deeds, it appears that the plaintiff corporation has succeeded to the interests of Frances D. Bliss and John R. White.
Defendants claim, however, that the deeds were insufficient to transfer what are characterized as inchoate, equitable rights or choses in action. This is really begging the question since if the plaintiff’s theory is correct, then Frances D. Bliss and John R. White, both before and after the tax sale, had an estate or interest in the real property. Subsequent grants and conveyances included all those interests, legal or equitable, present or future, vested or contingent, which the grantors possessed (Real Property Law, § 240, subd. 4). If the grantors had no interest to convey, then defendants must of course prevail. If they did, however, those interests passed by the deeds. The plaintiff corporation is, accordingly, a proper party.
While a tax title is a new and complete title in the land under an independent grant from the soverign authority which bars and extinguishes all prior titles and incumbrances of private persons and all equities arising therefrom (Lee v. Farone, 261 App. Div. 674, 676; Terrel v. Wheeler, 123 N. Y. 76), it is nevertheless well settled that a tenant in common in possession has the duty to pay taxes upon the land. Where such a tenant in common in possession, as Frank A. Ludlam was in this case, defaults in the payment of taxes and suffers the land to be sold for the taxes and becomes a purchaser at the tax sale, he cannot hold the land for his exclusive benefit, but holds title for the common benefit. The effect of the purchase of the tax lien is considered no more than the payment of the taxes and title is left exactly as it was before the sale. (Van Duzer v. Anderson, 282 App. Div. 779, affd. 306 N. Y. *730 707; Stevens v. Melcher, 152 N. Y. 551, 565.) Accordingly, after the tax sale in 1949 Frank A. Uhlendorf, as nominee of Frank Lndlam, held the property not only for Ludlam’s benefit, but also for the benefit of Frances D. Bliss and John R. White. The formality of the Administrative Code proceeding in no way altered this fact, and since the plaintiff corporation has succeeded to the rights of Bliss and White, the estate of Frank A. Ludlam as well as the defendants Frank A. Uhlendorf and Doris C. Uhlendorf would ordinarily be determined to hold whatever legal title or beneficial interest which they may possess in the property not only for their own benefit, but also for the benefit of the corporate plaintiff. The defendants, however, urge certain additional defenses which must be considered before such a determination can be made.
The first of these concerns adverse possession. In this connection the defendants have failed to prove that Ludlam was in actual possession of the parcel at any time prior to October 14, 1946, when his granddaughter Doris acquired the deed from Susan Leach. Some vague testimony was given to the effect that Ludlam had certain thatch grass cut from the general area prior to that time, but the witness couldn’t say with certainty that the grass was taken from Lot 58, and such testimony was neither qualitatively nor quantitatively sufficient to justify a finding of Ludlam’s possession during those years. He never paid taxes until after October 14, 1946, and as 15 years had not elapsed from that time until this action was instituted, the claim of adverse possession must fail. Moreover, Ludlam’s occupancy subsequent to 1946 was that of a tenant in common and is accordingly deemed to have been the possession of the other tenants in common and not adverse. (See Civ. Prac. Act, § 41-a.)
The defendants, however, raise a far more serious point They claim that the activities of one Eugene R. Hurley, Esq., have, either through the application of the familiar doctrine of “ clean hands ” or the theory of estoppel, precluded the plaintiff corporation from obtaining any relief in this equitable action. In this connection the following facts are found. Frank Ludlam retained Hurley to acquire the tax lien and deed to the property and paid for his services. Hurley knew that Ludlam’s granddaughter, by virtue of the Susan Leach deed, was a tenant in common with others and that she had defaulted in the taxes which gave rise to the lien. Hurley continued his services to Ludlam thereafter and when the latter died, Hurley continued representing Ludlam’s grandson, Frank *731 Uhlendorf, in whose name the lien had been purchased. It was a Hurley corporation, Knocklong Corporation, that was used as nominal plaintiff in the code action and Hurley received payment for his services from Ludlam’s daughter. Hurley also represented the Uhlendorf interests after Ludlam’s death in other contexts relating to Lot 58. Hurley maintained his familiarity with the property through 1958, was instrumental in the formation of the plaintiff corporation in that year, advised and directed its affairs in the acquisition of the deeds, and was the owner of one third of its capital stock at the time this action was commenced. He has since given up his interest in the corporation, but is an owner of land immediately adjacent to Lot 58, together with a Paul Leach and one Matzok, the two individuals who also constitute the sole stockholders of the plaintiff corporation today.
Hurley claims, however, that he had no knowledge that Ludlam was in possession of the property at the time of the tax sale, that Ludlam was the beneficial owner of his granddaughter’s interest, or that Ludlam was engaged in a scheme to oust his cotenants. Were Hurley a party to this action, these questions would be squarely presented, since if he was a privy to Ludlam’s scheme he obviously could not profit by information acquired in the course of representing Ludlam (cf. Zeiden v. Oliphant, 54 N. Y. S. 2d 27; Nichols v. Riley, 118 App. Div. 404; Matter of People [Bond & Mtge. Guar. Co.], 303 N. Y. 423; Drinker, Legal Ethics, ch. VI). The facts are otherwise. Hurley is not a party to the action, is no longer a stockholder of the plaintiff corporation and does not, from the record before us at least, stand to profit from a judgment in favor of the plaintiff. Moreover, there is no proof in the record that Leach or Matzok were aware of Ludlam’s scheme, and not a scintilla of evidence that Robert Bliss, who also stands to profit by a plaintiff’s judgment, was in any way aware of the facts. It must be borne in mind that Ludlam was engaged in a course of conduct calculated to affect his cotenants adversely. That his scheme failed as a matter of law does not add virtues to his conduct that did not exist before, and the application of the confidential relationship rule in this case, through an unwarranted extension of the estoppel theory, would have an effect of terminating the cotenancy that existed between Ludlam and his co-owners, and thus bring to successful fruition a plan which has already been ruled to be ineffective.
Accordingly, judgment will be granted to the plaintiff, without costs, and all motions upon which decision was reserved at the *732 trial are, resolved accordingly. Settle judgment on notice providing that title to Lot 58 is held hy the defendant Frank A. Uhlendorf for the benefit of the Ludlam Estate and the plaintiff corporation as their interests may appear, and for a partition and an accounting among the parties.