(November 12, 1963)

■ ALLEN E. R. CRAIG, Appellant, v. PAUL G. A. BOHACK, Respondent.— In an action *inter alia* for an accounting and to impress a trust on certain property, which once belonged to an alien and which was later acquired by the alien's American agent from the United States Custodian of Alien Property in whom title had vested during World War II, the plaintiff appeals from so much of an order of the Supreme Court, Queens County, dated March 27, 1963 as granted the defendant's motion to dismiss for patent insufficiency the first, second, third and fourth causes of action alleged in the amended complaint, with leave to replead the latter three causes of action only. Order, insofar as appealed from, reversed, with $10 costs and disbursements, and defendant's motion, insofar as it seeks to dismiss said four causes of action, denied. The complaint reveals the following facts: Plaintiff's assignor (Ernst Johann Hermann Bohack, hereafter called "Hermann") and the defendant (Paul G. A. Bohack, hereafter called "Paul") are brothers, the former apparently a German and the latter an American citizen. Both were legatees under the will of their uncle (Henry C. Bohack, deceased). In 1932 Hermann gave to the defendant Paul a full power of attorney to act for him (Hermann) in matters pertaining to his interest in the decedent's estate which was then being administered in the United States. Such power of attorney was not revoked until December, 1961. On the eve of World War II, Paul transferred Hermann's interest in the estate to a corporation, for which shares were issued to Paul in Hermann's name. Such shares vested in the Alien Property Custodian in 1943 by operation of the Trading with the Enemy Act (U. S. Code, tit. 50, Appendix, § 1 *et seq.*). In 1960, almost 10 years after the state of war with Germany had terminated, the defendant Paul purchased such shares for himself. As Hermann's assignee, the plaintiff seeks to impress a trust on the property in the hands of the defendant. Plaintiff has pleaded eight causes of action and asks, *inter alia*, for an accounting. As to the first four causes of action (which include the one for an accounting) the Special Term granted defendant's motion to dismiss on two grounds: (1) that any agency in the defendant Paul had been suspended by the outbreak of hostilities and terminated by the seizure of the property; and (2) that the Trading with the Enemy Act prevents the alien from recovering his property (see N. Y. L. J., March 21, 1963, p. 17, col. 5). We are constrained to disagree. Although war usually terminates the authority of an agent in hostile territory, the agency may be continued by the parties' consent (*Insurance Co.* v. *Davis,* 95 U. S. 425). The amended complaint here alleges continuation of the agency until December, 1961. Nor would the vesting of the property terminate the agency, for under the general power of attorney the agent would be bound to try to recover it. Defendant contends that it would be unlawful for him to recover the property for the alien, and the Special Term agreed. In our opinion, it is for the Federal Government to say whether such recovery would be unlawful, not the agent who seeks to benefit himself. In *American Bosch Magneto Corp.* v. *Bosch Magneto Co.* (127 Misc. 119) it was held that a sale to one other than a United States citizen was not void but voidable and then only at the option of the Government. Moreover, there appears to be no prohibition in the Trading with the Enemy Act against the recovery by purchase for an ex-enemy alien after termination of a state of war.

Section 12 of the act clearly contemplates restriction of sales only during the war, after which "any claim of any enemy * * * shall be settled as Congress shall direct". The last paragraph of section 12 is ameliorative in tone and has been so interpreted (*Brownell* v. *Fidelity Union Trust Co.,* 119 F. Supp. 755). In *Brownell* the court held that a German's interest in a trust created before the war was only suspended by the war, in spite of having been vested. Addressing itself to the last paragraph of section 12 the court there said (119 F. Supp. 755, 758): "This means that any property vested by the Alien Property Custodian, and not used by him for the superior needs of this government, will be considered by Congress in the light of the legal claims thereto." In fulfillment of the prophesy made in *Brownell,* section 41 of the act was added in 1962 and provides in part: "(a) * * * all rights and interests of individuals in estates, trusts, [etc.] * * * vested under this Act * * * which have not become payable or deliverable * * * prior to December 31, 1961, are divested". As the Bohack trust is still in force, it appears that had defendant Paul not made his purchase in 1961 the principal (his brother Hermann) might have received the return of his property at the end of 1961. The reliance placed by Special Term and by the defendant Paul on the section of the act which gives the Federal Government the power to pass good title to vested alien property is misplaced. No question arises as to the Government's power in this respect. The crucial question here is whether the good title which the defendant Paul, the agent, purchased must be held by him in trust for his principal (Hermann) whose erstwhile property he (Paul) acquired without Hermann's consent. For more than a century the answer has been that the agent must hold the title in trust for his principal (*Matter of People* [*Bond & Mtge. Guar. Co.*], 303 N. Y. 423; *Sea Cove Marina* v. *Uhlendorf,* 18 A D 2d 1021; *Nichols* v. *Riley,* 118 App. Div. 404). The strong policy behind this venerable doctrine should not be defeated by the mere possibility that the United States Government, under sections of the Trading with the Enemy Act which have been described as "harsh" and as "legalized robbery" (see *Schill* v. *McGrath,* 89 F. Supp. 339, 343), might avoid the sale to the alien's agent. In view of these considerations, we believe the first cause of action to be legally sufficient. We believe also that the second, third and fourth causes of action, if liberally construed in the light of the circumstances, are likewise sufficient. The plaintiff is without knowledge of the details of his agent's transactions, and this lack of knowledge is one of the grievances which plaintiff asserts. In our opinion, in view of the fiduciary relationship between principal and agent, plaintiff as the principal has stated sufficient facts to require his agent Paul to come forward and to make full disclosure of his conduct and his dealings. Beldock, P. J., Ughetta, Kleinfeld, Brennan and Hill, JJ., concur.