William T. Collins, S.
In this proceeding for the settlement of the account of the successor trustees, the wife of Daniel C. Buckley, one of the two surviving income beneficiaries, has filed objections which relate to transactions embraced in decrees entered upon prior accountings. Her right to interpose these objections has been upheld by this court in its decision denying petitioners’ motion to dismiss them as a matter of law (Matter of Buckley, 129 N. Y. S. 2d 737). Although making no adjudication on the merits, the court held on that occasion because the objectant had not been a party to the earlier accountings that she was not barred by the decrees then entered and, in addition, that the defense of laches asserted by the present accountants was not supported by the circumstances upon which they relied.
Daniel C. Buckley was married to the objectant in 1917. They separated in 1932, entering into an agreement providing for payments by the husband to the wife for her support at the rate of $4,000 annually. His subsequent defaults under the agreement enabled her to obtain successive judgments against him for $23,503.28 and $32,957.50 in actions instituted in the Supreme Court for this county in the years 1940 and 1946. In 1950 she brought a further action against the trustees in which the judgment entered against the defendants provided that she *578 was entitled “ to have applied and paid on account of said judgments the money owing to Daniel 0. Buckley from the estate of Daniel Buckley, deceased.” It is by reason of these judgments that she appears in the present proceeding.
The gravamen of her objections rests upon her assertion that an agreement made by Daniel C. Buckley with the trustees to have the income due him from the trust applied to the payment of principal charges was an act in fraud of her rights as his creditor (Debtor and Creditor Law, art. 10). It appears that in separate actions instituted in the years 1934 and 1937 the trustees had obtained permission from the Supreme Court to increase the then existing mortgages on buildings held in the ownership of the trust estate in order to enable them to make improvements and to comply with demands by the municipal authorities for the removal of violations. Under an agreement with the lending institutions the trustees applied income from the trust toward the discharge and satisfaction of the increased mortgages and their decision to do so was ratified and confirmed by the income beneficiaries, including the husband of the objectant, in an instrument which she attacks as fraudulent. Decrees entered in this court in accounting proceedings in the years 1944 and 1948 specifically confirmed and approved the application of income in conformity with the terms of the agreement and, in addition, ratified an arrangement providing for amortization of the cost of the improvements at a 4% annual rate.
It is the contention of the objectant that the improvements financed from the proceeds of the mortgages were of such a nature as to require that their cost be borne exclusively by principal. She argues that this result must follow not only as a matter of law but also because the will of the testator is said to evidence his purpose to spare the income beneficiaries from expenses of the sort to which the objections are addressed. Finally, perhaps in anticipation of the possibility that the court might not share her views in these particulars, she insists in the event it should now be found that amortization of the cost was proper that the formula fixed for its employment required income to bear too great a share of the total expense with the result that there was an infringement upon her rights as a creditor of a life beneficiary.
We need not be long concerned with the argument that the will forbids income from being charged with a part of the cost of the improvement for it can be said without more ado that it does nothing of the sort. Somewhat less free from doubt is the proposition that the nature of the alterations which were *579 made was such as to require that the expense be charged solely to principal as a matter of law. There is no doubt of the fact that the renovation of the buildings was conducted on a major scale so that they were transformed into completely different structures containing a number of small fireproof modern apartments instead of the larger old-fashioned units which were replaced. Under such circumstances was it proper for the court to direct that the cost of the improvements be amortized? Contending that it was not, the objectant relies upon the decision in Stevens v. Metcher (152 N. Y. 551) but the better and more modern rule calls for the application of the principle of amortization as my predecessor, the late Mr. Surrogate Foley pointed out in Matter of Del Drago (179 Misc. 383) where he said at page 387:
“ Many decisions in this State have recognized the rule that where unusual or extraordinary repairs or permanent improvements to real estate are made, an apportionment of the cost between life tenant and the remaindermen shall be had.
“ Stevens v. Melcher (152 N. Y. 551, 569) is a leading authority on this subject. There the trustees permitted the life tenant to erect a new building on land in the city of New York. The property had been unproductive. The cost of the building amounted to $130,000. The trustees had power under the will to make the improvements ‘ when it could be reasonably anticipated that such investment would be beneficial to the remaindermen and to the life beneficiary. ’ There it was unnecessary to charge a part of the cost out of the income of the life tenant by way of amortization or otherwise, because the life tenant had paid the total cost out of her own funds. In the process of fixing the apportionment of the cost, the court adopted a formula determining that the value of the fee had been enhanced by the sum of $90,000 by the erection of the building. That amount was charged out of principal. The balance of the cost of the building — $40,000 — was decreed to be the contribution of and a charge against the life tenant. It should be noted that in that case an entirely new building was constructed, whereas here only alterations to existing structures were made. The method followed in Stevens v. Melcher (supra) of valuing the enhancement of the fee by reason of the making of the improvement has yielded to the more recent trend of the law which provides for the amortization of the cost of the improvement.”
No issue arises concerning the obligation of principal to restore to income the moneys used to reduce the indebtedness created by the increase in the original mortgages. That obliga *580 tion has been recognized and has now been discharged from the proceeds derived on the sale of one of the properties. The trustees paid to the objectant from that source a sum in excess of $33,000 and she conceded at the hearing that, except as to the interest thereon which will be discussed later, no further liability exists in respect of the matter thus leaving for present determination only the question as to the propriety of the schedule of amortization.
While it is the law of the case that the objectant is not now barred from asserting the objections just described, it is not true that the decrees which she presently attacks are necessarily invalid. If those decrees, to the extent that they provided for the application of income to principal and for amortization of the principal improvements, had been based exclusively upon the consent of the objectant’s husband as income beneficiary, then there would be little doubt as to the validity of her position that his consent was in fraud of her rights as a creditor. See decision of Mr. Justice 0 ’Brien in Buckley v. Buckley (4 Misc 2d 550, 552) where he said: “While the use of income for rehabilitation of an estate is not a violation of section 15, yet such a rule benefits the parties in interest in the estate among themselves and cannot defeat the rights of creditors.” It does not appear, however, that the court’s order in directing amortization at the rates prescribed was based merely upon the consents of the income beneficiaries nor could it be supposed that such action was taken without further inquiry.
The objections interposed by Mrs. Buckley require the court to re-examine the situation in the light of the conditions obtaining at the time that amortization of the improvements was directed. The decrees then made have been held to be no bar to her present appearance but it would be an act of manifest injustice to so amend them as to have them conform to a later change in circumstances which could not then have reasonably been anticipated. Mrs. Buckley argues that fixation of amortization at the rate of 4% was based upon the supposition that the useful economic life of the building had been increased by 25 years as a result of the improvements. She points to the sale of one of the buildings for $260,000 some 12 years after the inception of the amortization program as evidence in support of her charge that the rate fixed was unrealistic, contending that no sale at that figure could have been made if there had been but 13 years of value left in the property.
The argument, plausible though it may at first appear, leaves the fundamental question begging for its answer. It is not *581 enough to say in the light of subsequent events that the court’s forecast of the length of time it would take to balance the equities between income and principal was erroneous and the result of miscalculation. Perhaps it was, for in the nature of the matter it would have been impossible to foretell its outcome with complete accuracy. Nevertheless, unless the decision was the product of fraud having been practiced on the court the result must stand unchanged.
In Matter of Basch (130 N. Y. S. 2d 471, affd. without opinion 284 App. Div. 957) this court had occasion to consider an agreement between the life tenant and the remainderman of a testamentary trust providing for the distribution of the income received from a 10-year royalty contract which by its nature possessed the characteristics of a wasting asset. The contract was capitalized at $159,672.36 its value as fixed in the estate tax proceeding. The parties agreed that of the earnings received until royalties were no longer payable, $7,195.26 was to be paid to the life beneficiary annually, representing interest at the rate of 4y2% on the stated capital value with the excess payable to principal. The agreement was incorporated in a decree on accounting which the executor of the estate of the then deceased life tenant later sought to reopen after it developed that principal was augmented to the extent of some $349,000 from royalty earnings against a total of $44,000 paid to the income beneficiary. In that case events which followed entry of the decree operated to produce a far greater imbalance in favor of principal than exists here, but the demonstration of that situation was not held to be sufficient cause for revision of the decision.
Although the amortization program was inaugurated in 1939 upon the appointment of one of the presently acting successor trustees, the improvements to which it related had been made in the case of one of the buildings in 1934 and in the case of the other in 1937. The buildings were then 49 and 42 years old, respectively. Despite the fact that the improvements were extensive, it could hardly be said that it was unreasonable to charge off the cost on the basis of an anticipation of 25 years of continued existence. It is permissible and customary to depreciate completely new apartment structures on a 50-year basis (cf. Bulletin F of the Internal Revenue Service) so that to have provided for the amortization of these properties over a period of 25 years was an act of prudence and fair dealing, particularly in the circumstances then obtaining when the market for metropolitan housing was not nearly as tight as it subsequently became. For these reasons the court holds that the objectant *582 has shown no basis for disturbing the calculation approved in the earlier decrees and her objections in that respect are overruled.
Objections are addressed to the cost of fire-retarding the premises as a charge against the income account. The court is satisfied that the alterations required in this connection were so extensive as to bring them within the category of permanent improvements. The cost as a consequence must fall upon principal in the first instance, but amortization at the rate of 4% will be directed as it was in the case of the renovations and to that extent this objection is sustained.
The final objection relates to the failure to allow interest on the moneys advanced from income to principal and used in the satisfaction and discharge of the replacement mortgages. The trustees recognized the existence of a lien against principal in favor of income in an amount equal to the advances. There is no reason why the objectant, as a creditor of an income beneficiary and a person entitled to a lien in her own right, should not have the benefit of the interest which the income advancements would have earned. An almost identical situation was before this court in Matter of Byrnes (N. Y. L. J., Dec. 14, 1950, p. 1582, col. 5). As was there said: “ In an accounting proceeding in the year 1936 this court ruled that the then income beneficiaries, all of whom at that time had proportional principal credits, would not be paid interest upon their advances to principal because the income advances had preserved the principal asset whose entire net income was distributable to the beneficiaries and such persons were receiving interest, in effect, in the form of the income which such advances were earning {Matter of Byrnes, 160 Mise. 895). It was. then apparent that a direction at that time for the computation and payment of interest, as such, to the beneficiaries would have involved merely additional bookkeeping without monetary advantage to any beneficiary. In the cited decision the court also held that an allowance of interest would be required when a change of income beneficiaries would operate to the detriment of the estate of a deceased beneficiary and, when that event occurred, an application could be made to modify the decree so that the new situation could be covered. In the year 1938 two of the initial income beneficiaries died and an application was made by the representatives of their estates for the payment of interest. A decree was made on March 23, 1939, directing that interest at the rate of 4 per cent per annum be paid to such estates upon their respective capital credits and that such interest be a first lien or charge against the trust income.”
*583 The objection addressed to the failure to allow interest on the moneys advanced by income to principal is sustained to the extent that the claim is allowed at 3%.
Proceed accordingly; submit decree on notice settling the account in accordance with the foregoing.